## MONTANA RESERVOIR & IRRIGATION CO. v. UTAH JUNK CO. et al.

No. 4026.   Decided July 25, 1924.   (228 Pac. 201.)

1. PRINCIPAL AND AGENT—PRINCIPAL BOUND BY DEALINGS THROUGH AGENT AFTER AUTHORITY REVOKED, UNLESS ONE SO DEALING HAS ACTUAL KNOWLEDGE OF REVOCATION.  One who has dealt with agent in a matter within the agent's authority has the right to assume, if not otherwise informed, that such authority continues, and, unless informed of revocation of such authority, the principal is bound by dealings of agent after authority is actually revoked.

2. CORPORATIONS—CORPORATIONS ACT ONLY THROUGH OFFICERS OR

DESIGNATED AGENTS. Corporations act and can act only through and by their officers or agents designated by such officers.

3. PRINCIPAL AND AGENT—PRINCIPAL ESTOPPED AS AGAINST ONE HAVING SAME OFFICERS AS PARTY PREVIOUSLY DEALING WITH AGENT. Where corporation, having same officers as plaintiff, had dealt with defendant's agent, and, without notice of revocation of his authority, such officers dealt with him on plaintiff's behalf, defendant was estopped to deny the agent's authority, though plaintiff had not previously dealt with such agent.

See 2 C. J. §§ 71, 165; 14 A. C. J. § 2149.

Appeal from District Court, Third District, Salt Lake County; *L. B. Wight*, Judge.

Action by the Montana Reservoir & Irrigation Company against the Utah Junk Company and others. From a judgment for plaintiff, defendants appeal.

AFFIRMED.

*B. L. Liberman* and *Dey, Hoppaugh & Mark*, all of Salt Lake City, for appellants.

*Ball, Musser & Robertson*, of Salt Lake City, for respondent.

GIDEON, J.

Plaintiff had judgment and defendants appeal. The amended complaint presents two causes of action. In the first cause of action plaintiff seeks to recover the balance of the purchase price for ten car loads of junk alleged to have been sold by plaintiff to the Utah Junk Company through its agent, one Aaron Rosenblatt. The second cause of action presents the same agreement of sale claimed to have been entered into between plaintiff and Rosenblatt on behalf of the Utah Junk Company. It is further alleged that prior to the sale Rosenblatt had been the agent of the

junk company and that the junk company had represented to plaintiff and to its officers and directors acting as officers and directors of associated corporations that said Rosenblatt was its agent. It is further alleged that, if Rosenblatt was not the agent of the junk company, plaintiff dealt with him as such and no notice had been given plaintiff or the associated companies of the termination of such agency.

The answer denies that plaintiff sold the metal junk to the junk company; denies any agreement of the sale with any one for the material in behalf of the junk company. The answer admits that certain cars of junk were shipped to the junk company from Yellowstone station in Montana between the dates mentioned in the complaint, but it is alleged that said material was shipped to the junk company by Rosenblatt as an independent trader, and that the junk company fully paid and accounted to Rosenblatt for said material. It is also admitted in the answer that Rosenblatt had, prior to May 31, 1917, been in the employ of the junk company as its traveling representative, but it is denied that the junk company held him out and represented to plaintiff that he was its agent.

The court found that plaintiff on July 11, 1917, sold to the junk company the goods and merchandise mentioned in the complaint. The court also found that an agreement was entered into between plaintiff and Rosenblatt acting on behalf of the junk company; that Rosenblatt had for a long time prior to the date of the sale been the agent of the junk company for the purpose of buying metal junk, and that during all of said time the junk company held out and represented said Rosenblatt to plaintiff and to the individual officers and directors of its associate corporations as the agent of the junk company authorized and empowered by it to purchase metal junk for and on account of said junk company. The court further found that plaintiff dealt with Rosenblatt, believing him to be the agent of the junk company, and that no notice had been given of the termination of the relationship of agency between the junk company and Rosenblatt. As a further finding of fact the court found that Rosenblatt

was the agent at the time of the sale and that the junk company ought to be estopped from denying such agency.

These findings are assailed as not having support in the evidence. It is without dispute that between August 11th and September 23, 1917, ten cars of junk, the property of plaintiff, was loaded on cars near Yellowstone, Mont., and shipped to the Utah Junk Company. The junk company was named both as consignor and consignee in that shipment. It is also without dispute that the company received the consignment. The first writing evidencing the sale is a letter dated August 11, 1917, and it is signed by Rosenblatt personally, and addressed to one W. T. Jackson, purchasing agent for plaintiff. The letter is a confirmation of the purchase made under the oral agreement between Rosenblatt and the representative of plaintiff. It also appears that the junk company had purchased from the Montana Power Company certain cars of junk. These purchases were made as early as April, 1917.

There is no question, nor is there any claim to the contrary, that Rosenblatt acted for and in behalf of the junk company in making those purchases. The Montana Power Company is a New Jersey corporation. Plaintiff is a Montana corporation. It is a subsidiary company of the Montana Power Company. The Montana Power Company holds all the stock of plaintiff, with the exception of nine shares, which are designated as directors' shares. The material purchased by Rosenblatt acting for the Utah Junk Company from the Montana Power Company was shipped from different places. Purchases were also made from two other companies, which companies were also subsidiary companies of the Montana Power Company. The general offices of the Montana Power Company in the state of Montana were, at the time of the trial, located at Butte, Montana. Plaintiff occupied the same offices. The president of the plaintiff company was vice president and general manager of the Montana Power Company. The treasurer of plaintiff was assistant treasurer of the Montana Power Company, and there were other officers interlocking between these two com-

panies. It is without dispute that Rosenblatt, at the time of making the purchase in question, represented himself to be the agent of the junk company. It appears from the books of the junk company, as well as from the testimony of its officers that the agency of Rosenblatt had been terminated in May of that year. There is a dispute as to whether any notice had been given to the Montana Power Company of the termination of such agency. The president of the junk company testified positively that he mailed such notice. The officers of the Montana Power Company testified that no such notice, to their knowledge, had ever been received by that company. The court found that no such notice had been given.

There is no controversy, nor can there be, as to the general rule of law that one who has dealt with an agent in a matter within the agent's authority has the right to assume, if not otherwise informed, that such authority continues, and unless notice of revocation of such agency is brought to his knowledge, the principal is bound, if the dealings continue after the authority is actually revoked. No citation of authority is necessary in support of that general proposition. Clearly, under that, if the purchase in this instance had been from the Montana Power Company, in the absence of any notice of the revocation of Rosenblatt's agency, the junk company would be liable, assuming as the proof in this case shows, that Rosenblatt represented himself to be such agent, and the power company acted in good faith in dealing with him as such. As above stated, the officers of the Montana Power Company were likewise officers of the plaintiff. The agent, in transacting business with the plaintiff, was dealing with the same individuals that he had dealt with in making the purchase from the Montana Power Company. The Montana Power Company and the plaintiff company are two distinct legal entities. It does not appear that the plaintiff had ever dealt with the junk company through the agency of Rosenblatt. On the contrary, it appears that no such relationship existed.

The concrete question presented may be stated: Did the

officers of the Montana Reservoir & Irrigation Company have the legal right to rely upon their knowledge gained while acting as officers of the Montana Power Company that Rosenblatt had been the agent of the junk company, and then representing himself to be such agent, and thereby bind the junk company?

I have found no case dealing with a like situation. The authorities cited by counsel do not aid in the solution of the problem here presented. Corporations act, and can act, only through and by their officers or agents designated by such officers. Knowledge imparted to the officers is generally held to be knowledge of the corporation. **2, 3** If the Utah Junk Company, by its acts and conduct, is estopped to deny the agency of Rosenblatt while dealing with the officers of the Montana Power Company, it would be illogical to hold that it would not be estopped while dealing with the same individuals as the officers of another or different corporation, especially so when, as shown here, the two corporations have the same ownership. The author, in 1 Mechem on Agency (2d Ed.) § 628, says:

"Where a general authority is once shown to have existed, it may be presumed to continue until it is shown to have been revoked, and persons who have dealt with the agent as such, or who have had knowledge of his authority, and are therefore likely to deal with him, may very properly expect that if the authority be withdrawn, reasonable and timely notice of that fact will be given and they may therefore lawfully presume, in the absence of such notice, that the authority still continued."

We are of the opinion, and so hold, that the findings of the court are supported by substantial competent testimony.

Errors are assigned respecting the admission of certain testimony. That testimony was offered to show the good faith of the plaintiff in dealing with Rosenblatt as the agent of the junk company, and was properly admitted for that purpose, and in no way was prejudicial to any substantial right of the junk company.

The judgment of the district court is affirmed, with costs.

WEBER, C. J., did not participate herein.