R. F. PAINTER *v.* THE STATE.

(*Knoxville*, September Term, 1931.)

Opinion filed January 25, 1932.

W. T. KENNERLY and H. H. CLEMENTS, for plaintiff in error.

W. F. BARRY, JR., Assistant Attorney-General, for defendant in error.

MR. JUSTICE SWIGGART delivered the opinion of the Court.

Painter was charged by indictment with unlawfully keeping and exhibiting a gaming device, a slot machine, at which persons played and gambled for checks and chips of value. Judgment of conviction imposed upon him a fine of ten dollars, from which he has appealed in error.

The single question presented is whether the machine in question is a gaming device, within the prohibition of the statute, section 6805 of Shannon's Code (all editions). The section provides: "If any person encourage or promote, aid or assist, the playing at any game, or the making of any bet or wager, for money or other valuable thing, or keep or exhibit any table or device for gaming, he is also guilty of a misdemeanor."

Section 6819 of Shannon's Code directs that all laws made for the prevention or suppression of gaming shall be construed as remedial and not penal statutes.

The machine here involved is a mint-vending machine, which, in addition to delivering a package of mints for the customer's coin, may emit the checks or chips described in the indictment. The number of such checks the customer will receive for each coin deposited, if any, is controlled by the interior mechanism of the machine, and varies from two to twenty. Each operation results in the appearance of a combination of symbols which, by reference to a printed legend on the front of the machine, represents one of the familiar plays of the game of base-

ball, a base hit, a base on balls, a home run, an out, etc. Continued operation by two customers would enable them to play an imaginary game of baseball as opponents. A demonstration before the jury presented the attorney-general and a witness, operating the machine alternately, as opposing teams. A picture of a baseball field on the machine is equipped with an indicator to enable the player to record the cumulative result of his successive plays. This result is not entirely controlled by the mechanism, it being possible for a frequent operator to develop skill in the play. A representative of the manufacturer, witness for Painter, testified: "Yes, you can acquire skill. If I become skillful enough, where I get familiar with the characters, I can switch them off and stop it just when they get ready to come down." Later he was asked by the Court: "Did I understand you to say a person could become skillful enough to catch the character that he wants to each time?" His reply: "Yes, that is possible."

The checks, of which the customer purchasing a package of mints may receive two or twenty, or some intermediate number, have no intrinsic value. They are delivered to him for the sole purpose of enabling him to operate the machine in playing the game of baseball as described. No mints are delivered for checks; they are not redeemable for merchandise or cash; and they may not be retained by the customers.

The opinion of this court in *McTeer* v. *State,* 129 Tenn., 535, 167 S. W. 121, demonstrates the illegality of this method of merchandising, unless it can be said that the checks issued by the machine are of no value, and that therefore the lure held out to the public to purchase the mints, is not a "thing of value."

The checks are but tokens of the things acquired by the customer who draws them. The thing received is the right to operate the machine for whatever amusement the playing of the game will afford. It is a right not extended uniformly to all customers of the store in which the machine is displayed, but only to those who purchase mints, and to them only according to chance and contingent fortune.

The machine, exhibited to us with the record, obviously required the expenditure of a considerable sum of money in its manufacture. The manufacturer's agent who testified in the case represents his employer to be a company of several million dollars capital, manufacturing this and similar machines on a large scale. They are not sold, but are leased or licensed for use in the sale of mints sold to the exhibitor by the owner of the machine. The agent was asked if the machine is effective to "stimulate and promote" the sale of the mints, and replied: "Yes, it does, just so much that we find it more practical to sell our merchandise this way rather than spend hundreds of thousands of dollars in advertising."

It occurs to the writer that this testimony of the manufacturer's agent answers the inquiry most material to this appeal. The right to operate the machine for the amusement of the customer is considered of sufficient value by the public, that their purchase of the mints is as greatly stimulated and promoted by the chance of receiving the checks as it would be by the expenditure of thousands of dollars in advertising the quality of the mints as merchandise. If this be true, what is it that the customer buys for his coin but the chance to receive tokens which will entitle him to operate the machine in the play? And particularly must this be true of the

player, engaged in such a contest as was demonstrated before the jury, who finds his checks exhausted, with his indicator on third base and his opponent a run ahead. If possessed of another coin, he will deposit it in the hope of enabling himself to continue the contest, with the package of mints a minor consideration. Who controverts this closes his eyes to an obvious trait, common at least to those of the public who can find any amusement in such things, and who would be inclined to purchase from the machine in the first instance rather than from a clerk over a counter. Not susceptible to direct proof, we have no doubt that it is this trait of character which the manufacturer and exhibitor of the machines seek to exploit.

In *State* v. *Smith,* 10 Tenn. (2 Yerger), 272, the court (CATRON, J.) said: "There is implanted in the nature of a man an inclination to gamble, which of all others is most difficult to bring within the restraints of law." The use of machines of the character here involved in the sale of merchandise is a direct effort to arouse and exploit this instinct to gamble, for the profit of local merchants and the nonresident manufacturer. If otherwise, why make the number of checks to be received dependent upon chance? It can have no wholesome effect upon legitimate business, since its tendency is to substitute the lure of an additional uncertain consideration for quality of the merchandise sold as the purchasing inducement. It is sought to clothe the practice of gaming for trifles with the livery of legitimate business and thus cause it to appear respectable. The merchandise is a confection, particularly attractive to youth, and the amusement which may be won by the purchase is the playing of a game which appeals most strongly to youth.

This combination has convinced us of the insidious evil of the display and use of the machine, as a violation of the quoted statute. The case involves not merely the small fine imposed upon the plaintiff in error, but the character of the device employed, and that this character is noxious we have no doubt. The issue is not controlled by the fact that the stakes to be played for are trifling. The fundamental and underlying principle of the offer made by the device to the customer is one of chance and hazard, and falls within the letter and spirit of the statute.

Direct authority for the condemnation of this machine as a gaming device is abundant. *Gaither* v. *Cate,* 156 Md., 254, 144 Atl., 239; *Rankin* v. *Mills Novelty Co.,* 182 Ark., 561, 32 S. W. (2d) 161; *State ex rel.* v. *Marvin,* — Iowa, —, 233 N. W., 486; *Harvie* v. *Heise,* — S. C., —, 148 S. E., 68; *State* v. *Mint Vending Machine, etc.,* — N. H., —, 154 Atl., 224; *Green* v. *Hart,* 41 Fed. (2d), 855.

A "thing of value" to be the subject of gaming may be "any 'thing' affording the necessary lure to indulge the gaming instinct. Any incitement which would impel the player to stake his money on a chance of winning would produce the evil consequences at which the enactment is aimed." *State* v. *Mint Vending Machine, supra.* "Combining the element of chance with the inducement of receiving something for nothing results in gambling." *Green* v. *Hart, supra.* "The use of the discs had a manifest purpose. Such purpose was to stimulate the expectation of the buying patron that he might receive something more than a package of mints. . . . If these discs were made 'good' for admission to a movie or other place of amusement, their character as a gam-

bling device would be readily recognized. Something akin thereto was their actual function as used. The 'movie' was furnished *instanter* in response to .the call of the disc. It must be held, therefore, that the machine in question was a gambling device within the meaning of the statute. It may be conceded that the gambling feature was of a very mild form, and that the offense might well be pardoned upon a plea of penitence and of purpose to desist. But it furnishes poor standing ground for the intervenor to ask of the courts a certificate of character for such a device.'' *State ex rel.* v. *Marvin, supra.* ''As we said, if the only thing these machines were used for was amusement, the method of affording that amusement, and the quantity thereof, is determined by chance, and while the appeal thereby made to gamble may not be as strong as where the stakes are greater, nevertheless it does encourage such spirit.'' *Gaither* v. *Cate, supra.*

In *Gaither* v. *Cate* and *Harvie* v. *Heise,* both cited above, the courts were impressed with a lack of sincerity in the evidence that the checks or discs given out from the machines were not redeemable in merchandise or cash, and considered their use as a subterfuge to conceal a more direct form of gaming; but they, as well as the other courts cited, expressly held the right to continue the operation of the machine for amusement, evidenced by the checks or discs, a ''thing of value,'' within the meaning and application of the statutes against gaming. We have given full credit to the evidence offered by the plaintiff in error, and upon that evidence hold the machine a gaming device, not to be lawfully exhibited. Therefore the judgment of conviction will be affirmed.

The conclusions hereinabove stated are concurred in

by a majority of the Court. The Chief Justice and Mr. Justice Cook dissent.

### DISSENTING OPINION.

During the consideration of this matter Judge Cook observed that the only thing of possible value involved in playing the machine was the time of the player, which, he added, would be presumably worthless in the case of an individual whose mental equipment was such that he could find enjoyment in this pastime.

It is a familiar maxim that the law does not care for trifles. If the rationale of the opinion of the majority be conceded, nevertheless it seems that the attention of the courts and the law officers of the state, in these times, should not be absorbed with such minor infractions. With no showing herein of attendant evils, I think there is not enough of substance in the charge to justify the prosecution and Judge Cook concurs in this view.