# APRIL 23, 1941

AUBREY BROADDUS v. THE STATE.

No. 21556. Delivered April 23, 1941.

The opinion states the case.

*Percy Forman,* of Houston, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State, on submission.

CHRISTIAN, Judge.

Conviction for a misdemeanor; punishment being assessed at a fine of twenty-five dollars.

The prosecution proceeded under Article 628, P. C., which reads as follows:

"Whoever permits any game prohibited by the preceding article of this chapter to be played in his house, or a house under his control, or upon his premises, or upon premises under his control, the said house being a public place, or the said premises being appurtenances to a public place, shall be fined not less than twenty-five nor more than one hundred dollars."

Article 619, P. C., provides:

"If any person shall directly, or as agent or employe for another, or through any agent or agents, keep or exhibit for the purpose of gaming, any policy game, any gaming table, bank, wheel or device of any name or description whatever, or any table, bank, wheel or device for the purpose of gaming which has no name, or any slot machine, any pigeon hole table, any jenny-lind table, or table of any kind whatsoever, regardless of the name or whether named or not, he shall be confined in the penitentiary not less than two nor more than four years regardless of whether any of the above mentioned games, tables, banks, wheels, devices or slot machines are licensed by law or not. Any such table, bank, wheel, machine or device shall be considered as used for gaming, if money or anything of value is bet thereon."

Article 620, P. C., reads as follows:

"It being intended by the foregoing articles to include every species of gaming device known by the name of table or bank, of every kind whatever, this provision shall be construed to include any and all games which in common language are said to be played, dealt, kept or exhibited."

We quote Article 621, P. C.:

"The following games are within the meaning and intention

of the two preceding articles, viz: Faro, monte, vingt et un, rogue et noir, roulette, A. B. C., chuckaluck, keno, and rondo; but the enumeration of these games shall not exclude any other properly within the meaning of the two preceding articles."

The proof on the part of the State, as well as that of appellant, was to the effect that appellant permitted a game to be played on her premises which is described in the testimony as follows:

"The Jumbo Parade is about forty inches high and is a sort of console cabinet. It does not have legs but is a sort of square box standing on its little end and the end that is up has a glass top on it and at the back of this top is a leaf sort of like the glass on top and it is painted something like the other glass and there are numbers painted on both glasses.

"There is an opening on the flat glass over the top of the game so you can see if the person playing the game has managed to get all the monkeys or the lions or the tigers or the elephants in a row by manipulating a control lever placed in front of the console. Before the game can be played, it is necessary to insert a five-cent coin in an opening on the table part of the console near the front.

"The upright portion of the console top with the figures on it is the score board and it has at the top printed 'Your Score.' If the person playing the game succeeds in lining up two monkeys he makes a score of 2,000 and if he gets two monkeys and a camel he makes a score of 4,000 and if he lines up two bears and an elephant he makes a score of 10,000 and so on like that.

"There is a little wooden trough with a nickle-plated bottom and a glass top and a steel ball and a plunger similar to a plunger on a marble table on the right-hand side of the game and after the player has succeeded in lining up whatever animals he is able to get in a line on the reels in the console, he can propel the steel ball by drawing back the plunger and letting it go. Depending upon how hard or how easily he discharges the plunger, he may succeed in shooting the steel ball into an opening and through another trough to the place where the ball will set off a switch that will set the game so that the successful player can play it again without putting any nickle in it.

"If he has made a 2,000 score he can play it twice free with-

out putting in any additional coins and if he has made a 4,000 score he can play four free games and so on at the rate of one free game for each 1,000 score.

"There is no way the game can award slugs and no coin chutes to award cash and it is not possible for the game to pay the player anything at all except free games and they come automatically if he succeeds in lining up the animals and then succeeds in making the proper shot with the steel ball and plunger."

The sheriff of Grimes County testified as follows:

"I watched several customers play the game and then I played it myself about six times, putting in a five-cent coin each time. I made a 2,000 score once and got to play two more games free as the machine set itself for the play. I asked what I had won when I made the 2,000 score and was told by the young lady cashier that I had won the right to play the game twice more. I asked if they did not give some money or prize in merchandise and she said no they did not give any such prizes or award."

On cross-examination he said "Yes, sir, I suppose you would say I got my money's worth in entertainment. I like to play the game to see if I can make the score or if I can line up the different animals. All the players seem to enjoy playing the game." Further, he testified: "No, sir, I never saw anyone bet on any Jumbo Parade game and I never heard of anyone doing it."

In State v. Langford et al, 144 S. W. (2d) 448, the game under consideration, and there declared to be a gaming device, was described as follows:

"The record shows that the four marble machines in question were owned and operated by Dewitt Langford and were exhibited under his direction by the other four appellees. The machines consisted of a playing board in which there were a number of holes in which marbles used in playing the game could be lodged. The playing board was protected by a glass cover. Springs and resilient pins were driven into the surface of the playing boards for the purpose of diverting the marbles and causing them to roll in uncertain directions across the surface of the boards. The player in order to secure a marble with which to play the game was required to deposit a five-cent piece in a slot in the machine. When the coin was inserted in the slot the marble was released and was propelled by a plunger inside of the machine on to the playing board. The player could, through chance, obtain a designated number of free games by

the marble striking a sufficient number of pins or falling into designated holes on the playing boards of said machines. If the score was not sufficiently high, no free games were won. It was possible to redeem the plays on each of said machines in cash or trade, but it was not shown that plays on any of the machines in question were so redeemed. Appellee Langford testified that he had directed the parties with whom said tables had been placed not to redeem plays on said machines in cash or trade."

The court, speaking through Chief Justice Monteith, used language as follows:

"Art. 619, Vernon's Annotated Penal Code, provides among other things that: 'Any such table, bank, wheel, machine or device shall be considered as used for gaming if money or anything of value is bet thereon.'

"The controlling question to be determined in this appeal is whether or not free games won on the said machines constitute a thing of value within the meaning of said Art. 619, and thereby render said machines gambling paraphernalia, tables or devices.

"Appellant contends that free games won are things of value, and that since the undisputed evidence shows that the machines in question were exhibited as contemplated by Art. 623, Vernon's Annotated Penal Code, which provides that 'The word "exhibited" is intended to signify the act of displaying the bank or game for the purpose of obtaining bettors,' that said machines were gambling paraphernalia and that they should be ordered destroyed as such.

"No brief has been filed in this court by appellees.

"While we have been cited to no case of parallel facts decided by the courts of this state, and have found none, the courts of the State of Arkansas, under statutes similar in practically all respects to the Articles of the Penal Code in force in this state, under similar states of facts, have held a machine to be a gambling device where its operation is such that, although the player in any event will receive something, he stands to win something in addition thereto.

"The Supreme Court of Arkansas in the case of Rankin, Constable, v. Mills Novelty Company, 182 Ark. 561, 32 S. W. 2d 161, 162, a case in which a device upon which a game of baseball could be played, says:

" 'In order to constitute a gaming device under the statute,

it must be one that is adapted or designed for the purpose of playing any game of chance or at which any money or property may be won or lost, and any one who shall bet any money or valuable thing, or "any representative of any thing that is esteemed of value," is guilty, under section 2634 of Crawford & Moses' Digest, of betting on a gambling device. By section 2640 of the same chapter of the Digest "gambling" is defined as the betting of any money or any valuable thing on any game of hazard or skill. It is clear from these sections and the entire chapter on gaming that the word "property," as used in section 2630, and the word "valuable thing," mentioned in other sections, are used synonymously, and that any valuable thing or "any representative of any thing that is esteemed of value" is "property" within the meaning of section 2630, supra.

" 'The machine in question is one which always gives in exchange for a nickle a package of mints, and, in addition to the mints, a number of "slugs," in varying amounts from two to twenty, with which a game may be played, there being an element of chance in the number of slugs obtained for a nickel. Is the right to play a game obtained in the above manner "property" or a "thing of value" within the meaning of our statute prohibiting the setting up of gambling devices and gambling? We think it is. It is a matter of common knowledge that the maintenance of places, having no value in themselves, but which are used for amusement only, are among the most remunerative kinds of property, such as miniature golf courses and other like means of amusement, and any thing that contributes to the amusement of the public is a thing of value. * * *'

"The holding in the Rankin case is followed by the Supreme Court of Arkansas in the case of Howell v. State, 184 Ark. 109, 40 S. W. (2d) 782.

"In the case of Mills v. Browning, Texas Civ. App., 59 S. W. 2d 219, suit was brought to recover automatic mint vending machines which had been seized under Arts. 636 and 637, Vernon's Annotated Penal Code. The machines in question were operated by inserting a coin in the slot and pulling a lever. The player received a varying number of tokens, some of them reciting thereon 'good for 5c in mechandise,' others bearing no inscription. Each of these tokens could be, if the player desired, played back into the machine with the hope of increasing the number of the player's tokens. The court in its opinion held that the machines in question were essentially gaming devices as a matter of law.

"In the case of Chambers v. Bachtel, 5 Cir., 55 F. 2d 851,

852, the court held that a machine which paid off in tokens which could be played in the machine was a gambling device. In this case there was no proof of an agreement to redeem the tokens received in cash or mechandise, however by the removal of a pin in the machine coins ranging from a nickel to a half dollar could be substituted for tokens and the machines thereby converted into gambling devices. The court in its opinion says: 'He would be a credulous person indeed who could believe that the customers playing with nothing but tokens expected only amusement and were not actuated by the belief that they could exchange them for money or other thing of value. It is of no significance that there was no agreement to redeem the tokens in cash or in goods.'

"In the cases of Houghton v. Fox, Tex. Civ. App., 93 S. W. 2d 781; Carroll v. State, Tex. Cr. App., 81 S. W. 294; Brogden v. State, 47 Tex. Cr. R. 121, 80 S. W. 378, the courts in each of said cases held that it was unnecessary to prove that money or anything of value was bet upon the game. * * *

"Under the above holdings, the judgment of the trial court is reversed and the cause remanded with instructions that the same marble machines in controversy be ordered destroyed as gaming devices or paraphernalia."

In 24 American Jurisprudence, at page 423, it is said: "Furthermore, a machine which returns merchandise of the value of the coin played therein and, in addition, a chance of receiving a varying amount of checks which may be used to play the machine for amusement only is a gambling device, the right to continue the operation of the machine for amusement being a thing of value within statutes directed against gaming." In support of the text several authorities are cited, among them being State v. Baitler, 161 Atl. 671, and Painter v. State, 45 S. W. (2d) 46.

We think the free games offered by the machine in question were things of value within the statute. We are in accord with the holding of the court in State v. Langford et al, supra. We are also of opinion that the text referred to in American Jurisprudence, supra, embraces a correct legal proposition.

The judgment is affirmed.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

HAWKINS, Presiding Judge.

The foregoing opinion was prepared by Judge Christian and brought into consultation on the morning of April 15, 1941. During consultation, at about 10:30 a. m., he was suddenly stricken and soon lapsed into unconsciousness, and passed away about 7 o'clock in the evening of April 15. In the afternoon the court continued its consultation, considered the opinion, and adopted the same. It is now here formally announced as the opinion of the court under the name of our lamented co-worker, this April 23, 1941.