**132 P.2d 715**

**GIOMI et al. v. CHASE et al.**

**No. 4725.**

Supreme Court of New Mexico.

Dec. 31, 1942.

Edward P. Chase, Atty. Gen., and George H. Hunker, Jr., Asst. Atty. Gen., for appellants.

Mechem & Hannett, of Albuquerque, for appellees.

SADLER, Justice.

The question for decision is whether free games awarded the player for his sole enjoyment and amusement for successful operation through chance of a so-called pinball machine, constitute "anything of value" within the meaning of such language as employed in 1929 Comp. § 58-201, (N.M. S.A.1941, § 41-2201), making it unlawful to play at or operate a game of chance played with cards, dice, slot machine or other gaming device, for money or anything of value.

The question arose in a suit by the plaintiffs against the Honorable E. P. Chase as Attorney General, and the Honorable Quincy D. Adams as Acting District Attorney of the Second Judicial District, as defendants, for a declaratory judgment as to whether the possession or ownership of these so-called pinball machines constitutes a violation of the statute mentioned contrary to an opinion theretofore rendered by the Attorney General. The complaint al-

leged it to be the duty of the defendants, who are the appellants here, to enforce the criminal statutes of the state and that they threatened to file criminal informations against plaintiffs as lessors of said machines and their several lessees in the city of Albuquerque by virtue of their possession and ownership thereof. Answering, the defendants admitted it was their purpose to file criminal informations against the plaintiffs as alleged in the complaint and they joined in the request that the true meaning of the statute in the respect questioned be declared, stating it as their belief that a violation was involved. Hence, we do not pause to consider the wisdom of applying generally the declaratory judgment act to situations involving threatened criminal prosecutions.

The findings were mainly deduced from the pleadings. It thus was admitted that on and prior to October 1, 1941, the plaintiffs had leased to various persons under the arrangement pleaded pinball machines of the kind described; that such machines do not pay or deliver to the person operating the same any money, property, merchandise, chip, token, or any other tangible thing, but instead only amusement to the player; that the defendants threatened criminal prosecutions against all persons, including the plaintiffs, who owned or operated said machines, pursuant to an opinion by the Attorney General that they constituted gaming devices within the interdiction of the statute above mentioned.

The machine, commonly known as a "pinball machine", and its operation, are described in the findings as follows: "A machine commonly known as a 'pinball machine' is one which the player, by depositing a five cent (5¢) coin in a slot, puts five (5) steel balls, one and one-fourth inches (1¼″) in diameter, onto the field of play. The player, by pulling a spring actuated plunger, throws the steel ball against a wooden ark or flange in the upper end of a tilted table, which table is twenty-three (23) inches wide and seventy (70) inches long, and upon which are various rubber bumpers which deflect the balls in various and unpredictable directions. The ball goes through various lanes between the bumpers and by coming in contact with different bumpers, a score is registered from the contacts made. These machines compensate the player for a high score by awarding him one or more free games. The device is so constructed as to allow the player of the machine to play an additional game or games automatically upon being awarded free games. The machine is so constructed so as to allow either the player or the proprietor of the business where the machine is located to cancel the free games awarded thereby by pressing a small button upon the underside of said machine."

The trial court made the additional finding that no evidence was offered disclosing that the playing of the machines tends to or does promote gambling or corrupt the morals of any person; also, that there was no showing of any evils attendant on their use or operation in public places.

The court made the following conclusion touching the legality of owning or operat-

ing a machine of the kind described in the findings, to-wit: "The Court concludes as a matter of law that the operation of the pin-ball machines described in the pleadings and the findings of fact, are not gaming devices or games of chance played with slot machines, or a gaming device played or operated for money or any thing of value within the purview of Section 58-201, New Mexico Statutes Annotated, Compilation of 1929."

It further concluded that amusement is a thing of value (a conclusion concurred in even by counsel for appellees) and that the plaintiffs were entitled to an injunction restraining defendants from enforcing the statute against them on account of the ownership or operation of said machines. A declaratory judgment conforming to the conclusion quoted was entered in which plaintiffs were given leave to apply for consequential relief at any time thereafter in accordance with the terms of the New Mexico declaratory judgment act.

■ The statute involved, 1929 Comp. § 58-201 (N.M.S.A.1941, § 41-2201), reads as follows: "It shall hereafter be unlawful to play at, run or operate any game or games of chance such as keno, faro, monte, passfore, passmonte, twenty-one, roulette, chuck-a-luck, hazard, fan tan, poker, stud poker, red and black, high and low, craps, blackjack or any other game or games of chance played with dice, cards, punch boards, slot machines or any other gaming device by whatsoever name known, for money or anything of value, in the state of New Mexico."

There is present in the case before us every element necessary to brand the pinball machine a gaming device within the statute, if the free games awarded for its successful operation constitute anything of value as intended by the statute. Price, prize and chance are involved certainly. But, the prize being free games for the player's own amusement, the question recurs whether this is anything of value within the purview of the statute.

The precise point to be decided is a narrow one. We have no New Mexico decision parallel on the facts. Grafe v. Delgado, 30 N.M. 150, 228 P. 201, holding the doctrine of ejusdem generis applicable in arriving at a proper construction of a certain portion of the statute affords little aid. In State v. Apodaca, 32 N.M. 80, 251 P. 389, we held that machine to be a gaming device which, for every coin deposited, paid the player its value in chewing gum but with the chance, at each play, of winning checks redeemable in merchandise, having a greater value. This case involved primarily the contention that because the machine invariably paid the player the value of his money in chewing gum, the mere circumstance that it sometimes paid him a greater value in checks redeemable in merchandise, did not constitute it a gaming device. We rejected the contention. But this does not help us in answering the query whether amusement of the player is anything of value within the purview of the statute. The trial court's decision turned on the view that it is not. With this conclusion we are unable to agree.

Although there is some authority to the contrary, the texts and better reasoned cases support the view that amusement is a thing of value under statutes of similar purport to ours. 24 A.J. 423; annotations in 38 A.L.R. 73, supplemented in 81 A.L.R. 177; 26 Va.Law Rev. 955; Painter v. State, 163 Tenn. 627, 45 S.W.2d 46, 81 A. L.R. 173; Alexander v. Martin, 192 S.C. 176, 6 S.E.2d 20; Colbert v. Superior Confection Co., 154 Okl. 28, 6 P.2d 791; State v. Baitler, 131 Me. 285, 161 A. 671; Boynton, Attorney General of Kansas v. Ellis, 10 Cir., 57 F.2d 665; Broaddus v. State, 141 Tex.Cr.R. 512, 150 S.W.2d 247.

The author of the text on Gaming and Prize Contests, in 24 Am.Jur. 423, has the following to say on the subject under discussion, to-wit: "Furthermore, a machine which returns merchandise of the value of the coin played therein and, in addition, a chance of receiving a varying amount of checks which may be used to play the machine for amusement only is a gambling device, the right to continue the operation of the machine for amusement being a thing of value within statutes directed against gaming."

The author of the supplemental annotation of the subject "Slot vending machine as gambling device" in 81 A.L.R. 177, says: "Slot vending machines which, in return for coins deposited therein, dispense merchandise, accompanied at occasional and uncertain intervals by a varying amount of checks or tokens (which in some instances may be traded for other merchandise, but in most instances are supposed to be used only for deposit in the machine to obtain some sort of amusement, such as pictures), have in many recent cases been held gambling devices."

In Colbert v. Superior Confection Co., supra [154 Okl. 28, 6 P.2d 792], the statute involved made it unlawful to operate "any slot machine for the purpose of having or allowing the same to be played by others for money, property, checks, credits or any representative of value". Although the Supreme Court of Oklahoma held that, under the provisions of the statute, it is immaterial whether the checks are of value or not; nevertheless, it went on to say: "If the act in question applied only to things of value, we think that the amusement held out as an inducement is a thing of value sufficient to bring these machines within the plain provisions of the act."

In State v. Baitler, supra, the Supreme Court of Maine was dealing with a statute similar to ours. Describing it, the court said:

"In return for a nickel, the machine delivered, with certainty, to every customer, a package of candy mints, of equivalent retail value. At the same time, and by the same operation, metal tokens or checks became available to purchasers of the mints, not to all alike, but in varying number, from two to twenty, in accordance with the functioning of the contrivance.

"These tokens had no monetary or commercial value. They were designed to be played back into the machine, one by one.

"Putting back the tokens did not cause the vending or delivering of merchandise."

On the decisive question before us, the court said:

"The tokens were things of value. They evidenced right to operate the 'amusement'. Each was a ticket to part of the game. 'A "thing of value" to be the subject of gaming may be "any 'thing' affording the necessary lure to indulge the gambling instinct."' Painter v. State 1932, 163 Tenn. 627, 45 S.W.2d 46, 47 [81 A.L.R. 173].

"There was, as hereinbefore stated, lack of uniformity in the number of tokens delivered. Some customers got more than others; some less. Tokens sufficient to play the game to a finish might be received; or might not. The same player could operate the machine, over and over again, with unlike results. The element of chance was always present. The allurement of something for nothing was attendant."

Boynton, Attorney General of Kansas v. Ellis, supra, by the U. S. Circuit Court of Appeals for the Tenth Circuit, is a case very similar to the one before us. The suit was one in equity to enjoin the Attorney General and others from enforcing the anti-gambling statute against petitioners. The only difference in the nature of the proceeding is that here the plaintiffs sought no more than a declaratory judgment establishing their right to such an injunction against the Attorney General and others. From an interlocutory order granting an injunction, the Attorney General of Kansas appealed. The statute involved described as a gambling machine any table or device adapted and designed to play any game of chance "for money or property". [57 F.2d 666.] The slot machine involved was so constructed that a patron by inserting a nickel in a slot would receive a package of mint and also by chance a varying number of tokens or checks which might be replayed in the machine and produce on rotating cylinders colored pictures across which were exhibited "fortune-telling remarks, 'wise-cracks,' etc." Reversing the lower court, the U. S. Circuit Court of Appeals for this Circuit, said:

"It seems clear to us that these tokens or checks which are obtained by chance represent some value and constitute property. The best reason for this view is that the public is thereby enticed into patronizing the machines. It is the professed object of installing them. The tokens or checks may be likened to theater tickets in representing a means of amusement. The tickets have value. State v. Blair, 130 Kan. 863, 288 P. 729; State v. Haining, 131 Kan. 854, 293 P. 952.

"The principle generally sustained by the courts is that, 'where one who plays a slot machine stands to win or lose money, trade, or checks, by hazard or chance, the machine is a gambling device.' 27 C.J. p. 989. Otherwise stated, it is that 'any slot machine * * * will be deemed to be an unlawful gambling device, where the one who plays the machine stands to win or lose money, trade checks, or prizes, by a chance, or more broadly, where there is an ele-

ment of chance in its operation.' 12 R.C.L. p. 730.

"These texts are supported by a wealth of decisions. Statutes like those of Kansas may be regarded as condemning an extreme instance of gambling, but the wisdom of the enactments is a legislative question. They fall within the police power of a state. By uniform authority appellee's machines must be classified as gambling devices. The following cases are squarely in point: [Citations omitted.]

\* \* \* \* \* \*

"Our conclusion is that appellee's slot machines are gambling devices, and their operation is violative of the valid laws of Kansas and of like ordinances of its municipalities, as the tokens or checks which are delivered in varying numbers by chance enable patrons who receive them in connection with the purchase of mints to obtain in addition something of value. The value may be slight, but still it is property, in that it affords amusement to the players which entices them into patronizing the machines."

The Court of Criminal Appeals of Texas in Broaddus v. State, supra, reviewed a prosecution under a statute prohibiting the keeping or exhibiting for the purpose of gaming, any gaming table, bank, wheel or device of any name or description whatever, etc., and declared: "any such table, bank, wheel, machine or device shall be considered as used for gaming, if money or anything of value is bet thereon." [141 Tex.Cr.R. 512, 150 S.W.2d 248.] The

only reward for the player of the machine in question, if luck favored him, was additional free games upon attaining certain scores. After reviewing the authorities. and in affirming a conviction, the court said: "We think the free games offered. by the machine in question were things of value within the statute. We are in accord with the holding of the court in State v. Langford et al., supra. We are also of opinion that the text referred to in American Jurisprudence, supra, embraces a correct legal proposition."

A study of our statute satisfies us,. conformably to the weight of authority and reason, that when the legislature denounced and rendered unlawful "any \* \* \* games of chance, played with \* \* \* slot machines or any other gaming device \* \* \* for money or *anything of value*",. (emphasis ours), it purposely refrained from attempting any enumeration of the multitude of items constituting "value", tangible and intangible, comprehended within the phrase "anything of value". No, doubt the legislature, mindful of the ingenuity ever employed to escape the interdiction of anti-gambling laws, reasoned that if it adopted an all embracing, all consuming phrase, such as this, its true meaning and intent could not be defeated by subtle and refined construction. It no, doubt was familiar with the rule that where the language is clear and unambiguous,. there is no room for construction. Atlantic Oil Producing Co. v. Crile, 34 N.M. 650, 287 P. 696. And so it employed language free from ambiguity. We have no right to,

fritter away its meaning by artful construction.

The only point of difference between our view of the statute and that of the trial court arises over this very question of the right to construe. It adopted a conclusion requested by defendants to the effect that amusement is a thing of value. Of this there seems no room for argument. The player at a pinball machine proves it when he deposits his five cent coin for the privilege of playing it. And the correctness of the assertion is but emphasized if the lure and inducement to the first play spring from the hope that before it is ended, luck will favor the player by awarding him additional free games. If, as one of the quoted opinions says, the prize were a theatre ticket, none would question it as constituting value. The fact, however, that the stake won is small does not alter the verity of the principle involved.

 The trial court seemed to entertain the view, however, that although "amusement" is a thing of value and in some circumstances, if it should constitute the winning, might even be within the interdiction of the statute, that, nevertheless, the form of amusement here disclosed is not of the kind the legislature had in mind; hence, was not within the purview of the statute. Thus, construction was resorted to for ascertaining the meaning of an unambiguous statute. The legislature itself makes no distinction between the kinds of value meant and it is not the province of the courts to do so. The rather harmless and innocent character of the amusement afforded the player on the machine in question may suggest to some that it ought to be outside the interdiction of the statute. The legislature has thought otherwise and the matter being one of policy the courts can have no proper concern therewith.

It follows from what has been said that the judgment of the trial court must be reversed and the cause remanded to the district court of Bernalillo County with instructions to set aside its judgment and enter a declaratory judgment consistent with the views herein expressed.

It is so ordered.

BRICE, C. J., and MABRY, and BICKLEY, JJ., concur.

ZINN, J., being absent, did not participate.