[1] This is an action brought by the Assistant Prosecuting Attorney of Greene County, seeking to have condemned and destroyed a certain pinball machine, designated by the alliterative and euphonious cognomen, "Jack and Jill." It is alleged in the *Page 855 
petition, after giving a meticulous description of the operation of the machine, that it "is a gambling device, adapted, designed and intended for the purpose of playing thereon or therewith, a game of chance for money or property."
[2] The machine had previously been seized under a search warrant and was then in the hands of the sheriff. The facts relative to it were included in a stipulation, which greatly condensed was that it was the ordinary and well known pinball machine, in which one inserts a five cent coin and, by manipulating a plunger, propels balls over the surface of an inclined table which strike certain pins, etc., on the table. A score is electrically registered on an illuminated board at the rear end of the machine. If this score totals a certain amount, the player is entitled to one or more free games. The machine gave no tokens, slugs, tickets, money, prizes, merchandise or anything of that character. It merely permitted the player to play one or more games without inserting another coin in the slot. It was also stipulated that to some extent, the score might be influenced by the manipulations of the player but we think the stipulation shows that the score obtained was predominately due to chance and not to skill. Under those circumstances, we agree with the learned trial court in finding that the element of chance existed, and that the results depended more largely on chance than skill. Hofferman v. Simmons, 177 Misc. 962, 32 N.Y.S.2d 244; 38 C.J.S. Gaming, § 1, Page 35.
[3] The case was tried and the court held that it was a gambling device and ordered its destruction. From this order and decree, the owner of "Jack and Jill", has appealed.
[4] The sole question before us is: In the operation of this machine, does the fact that the player may play a free game or games upon the attainment of a certain score make it a gambling device under our statutes and subject it to confiscation? So far as we have been able to ascertain, this question has never been decided by an appellate court in Missouri.
[5] Gambling or the keeping of a gambling device was not a crime at common law. Stubbs v. State, Miss., 40 So.2d 256. People v. Jerman, 29 Cal.2d 189, 173 P.2d 805; People on inf. Roberts v. Reille, City Ct., 50 N.Y.S.2d 196. Hartford Accident and Indem. Co. v. Benevento, 133 N.J.L. 315, 44 A.2d 97; U.S. Dixon, D.C., 25 Fed.Cas., page 872, No. 14, 970. Reinmiller v. State, 93 Fla. 462, 111 So. 633; Monterey Club v. Superior Court, etc., 48 Cal.App.2d 131, 119 P.2d 349.
[6] Therefore, if it is a criminal offense to operate a gambling device, or to gamble, it must be by virtue of some statute.
[7] This action seeks to condemn and destroy this machine on the theory that it is such as is prohibited by law. Section 4173, R.S.Mo. 1939, Mo.R.S.A., provides for the issuing of a search warrant and the seizure of "any gaming table or gambling device prohibited by law." The officer serving the warrant is empowered, when necessary, to break open doors for the purpose of executing the warrant. Section 4174. Upon such seizure, a hearing shall be had by the judge or justice issuing the search warrant, Section 4175, after giving not less than five nor more than twenty days notice, and this hearing is for the purpose of "determining whether such property is the kind of property mentioned in Section 4173, * * *" and any person claiming an interest therein may appear at such hearing and defend against the charge as to the nature and use of the property so seized. Section 4176. If the judge or justice hearing such cause shall determine that the property or articles seized are of "the kind hereinbefore mentioned, * * *," he shall cause the same to be destroyed or if they are necessary to be used as evidence in any criminal prosecution, they may be retained until such necessity no longer exists.
[8] Statutes for the seizure and destruction of property are highly penal, must be strictly construed against the state and in favor of the owner, they cannot be enlarged or extended by intendment but such action must be fully justified by the statute. A statute that permits the seizure and *Page 856 
forfeiture to the state for destruction of a person's property used in the commission of an illegal act without any compensation therefor is in the nature of a punishment and must be strictly construed. Its language cannot be enlarged beyond the ordinary meaning of its terms in order to carry into effect the general purposes for which the statute was enacted. Crawford on Statutory Construction, Sec. 240. State ex rel. Spriggs v. Robinson, 253 Mo. 271, 161 S.W. 1169; State v. Waite, 156 Kan. 143, 131 P.2d 708, 148 A.L.R. 874.
[9] Crimes are not to be built up by courts with the aid of inference, implication and strained interpretation. People v. Zimbrolt, 35 Cal.App.Supp.2d 745, 91 P.2d 252.
[10] Therefore, before this property should be destroyed, the evidence must clearly show that it is a "gaming table or gambling device prohibited by law." Section 4173. Let us therefore search the statutes for such a prohibition. Section 4675 of the Revised Statutes of Missouri 1939, Mo.R.S.A., is as follows: "Every person who shall set up or keep any table or gaming device, commonly called A B C, faro bank, E O, roulette, equality, keno, slot machine, stand or device of whatever pattern, kind or make, or however worked, operated or manipulated, or any kind ofgambling table or gambling device adapted, devised and designedfor the purpose of playing any game of chance for money orproperty and shall induce, entice or permit any person to bet or play at or upon any such gaming table or gambling device, or at or upon any game played or by means of such table or gambling device or on the side or against the keeper thereof, shall, on conviction, be adjudged guilty of a felony, and shall be punished by imprisonment in the penitentiary for a term of not less than two nor more than five years, or by imprisonment in the county jail for a term not less than six nor more than twelve months. R.S. 1929, § 4287." (Italics ours.)
[11] If the above statute applies, it is clearly apparent that the device must be adapted, devised and designed "for the purpose of playing any game of chance for money or property * * *." The Assistant Prosecuting Attorney must have had this statute in mind when he drew his petition because he asserts that the machine "is a gambling device, adapted, designed and intended for the purpose of playing thereon or therewith a game of chance for money or property."
[12] Section 4678 of the Revised Statutes of Missouri 1939, Mo.R.S.A., provides: "Every person who shall permit any gamblingtable, bank or device to be set up or used for the purpose of gaming in any house, building, shed, booth, shelter, lot or other premises to him belonging or by him occupied, or of which he hath at the time the possession or control, shall, on conviction, be adjudged guilty of a misdemeanor and punished by imprisonment in the county jail or workhouse for not more than one year nor less than thirty days, or by fine not exceeding five hundred dollars or less than fifty dollars."
[13] This statute does not define a gambling device but makes it a crime to permit one to be set up or used in a house, etc.
[14] No other sections have been cited and an independent search reveals no other relating to the subject of gambling devices. The device must be such as is condemned by some statute. If it is such as is described in Section 4675, it must be a device adapted, devised and designed for paying money or property. Section 4676 provides if any person shall bet "money or property" upon such gambling device as prohibited by Section 4675, or who shall bet upon any game played upon such gambling device, or who shall loan money to another to so bet and the same shall be so used, or who shall in any manner be interested in such playing or betting, at such device, shall be guilty of a misdemeanor. This statute refers to the player and his aiders and abettors and not to the character of the device, itself. to us it seems clearly apparent that before a gambling device can be condemned, it must be one wherein the "pay off" is in money. or property. In this case, of course the pay off is not money. Therefore it becomes necessary for us to investigate the legislative intent in using that word, property. Fortunately, that is not such a difficult task *Page 857 
because the Missouri Legislature, long after the enactment of Section 4675, from Act of Jan. 8, 1814, 1 Terr. Laws, p. 303, § 3, R.S. No. 1825, p. 309, § 87, has, itself, defined the word property for us. Certainly if the right to play a free game is property, it is personal property. It could not be real property. Section 655 of the Revised Statutes of Missouri 1939, Mo.R.S.A. derived from Laws of Missouri 1849, Page 103, states that in the construction of all statutes, words shall be taken in their plain, ordinary and usual sense and that "the words `personal property' shall include money, goods, chattels, things in action and evidences of debt; * * *."
[15] Respondent has cited several Arkansas and other cases, which we shall presently discuss but first, we should ascertain what the Arkansas statute provides relative to gambling devices.
[16] Section 41-2003, Arkansas Statutes 1947, Annotated, condemns the keeping or exhibiting of a gambling device, "adapted, devised or designed for the purpose of playing any game of chance, or
at which any money or property may be won or lost, * * *."
[17] Section 41-2005 makes it a crime for anyone to bet money or other valuable thing "or any representative of anything that is esteemed of value, * * *" upon a gambling device. It will be noticed that Section 41-2003 is in the disjunctive and that if a device is designed for playing any game of chance, it is condemned; or if it is so designed that upon it "any money or property may be won or lost, * * *" it is also a criminal offense to keep it. This statute is dissimilar to ours, which states that the device must be designed "for the purpose of playing any game of chance for money or property * * *."
[18] In Rankin v. Mills Novelty Co., 182 Ark. 561, 32 S.W.2d 161, 162, the Supreme Court of Arkansas in a case involving a machine, where after depositing a nickel, the player received a package of mints, together with a varying number of slugs, from one to twenty, the slugs later to be used for the purpose of playing the game but for which no mints were received, held that under the Statutes of Arkansas this was a gambling device. It quoted parts of Sections 41-2003 and 41-2005. The latter section condemns betting on a gambling device, "any representative of anything that is esteemed of value, * * *."
[19] Furthermore, the decision states that the Statutes of Arkansas define gambling "as the betting of any money or any valuable thing on any game of hazard or skill." Sec. 41-2012. The decision then states that under the Arkansas Statutes, the word "property" and the words "valuable thing" are used synonymously and that the words "any representative of any thing that is esteemed of value" are synonymous with "property." The court then held that anything that contributed to the amusement of the public was a thing of value and that under the Statutes of Arkansas, the machine was a gambling device.
[20] Our statutes do not contain the phrases "valuable thing", "thing of value" or any "representative of any thing that is esteemed of value."
[21] In Steed v. State, 189 Ark. 389, 72 S.W.2d 542, construing the same statute, the court held that a similar machine was a game of chance. As we read the Arkansas Statutes, if the device permits the playing of a game of chance, then it is unnecessary to show that it was designed as one upon which can be won money or property or any valuable thing. The element of chance is in attaining the score. The Steed case cited Howell v. State,184 Ark. 109, 40 S.W.2d 782, and that case merely follows the Rankin case and held that when one played the machine and by chance
was given additional plays, that those plays were "representative of any thing that is esteemed of value." It does not state whether the owner, the player or the law is to decide what is "esteemed of value."
[22] In Stanley v. State, 194 Ark. 483, 107 S.W.2d 532, the Supreme Court of Arkansas following the cases above referred to, merely held that the machine was a gambling device because it permitted the playing of a game of chance. Those cases are not in point with the case before us because of the dissimilarity of the statutes of Missouri and Arkansas. *Page 858 
[23] Respondent has also cited Alexander v. Martin, 192 S.C. 176,6 S.E.2d 20. Section 1301-A of the criminal statutes of South Carolina, Code 1932, makes it a criminal offense for anyone to keep on his premises "any vending or slot machine, punch boards, pull boards, or other devices pertaining to games of chance of whatever name or kind, * * *," excepting therefrom certain vending machines, "in which there is no element of chance." The section further provides: "That this section is also intended to prohibit all vending, slot machines, punch boards, pull boards, or other devices pertaining to games of chance, that display different pictures, words, or symbols, at different plays, or different numbers, whether in words or figures, or which deposit tokens or coins at irregular intervals, or in varying numbers to the player or in the machine."
[24] The South Carolina statute also states that slot machines are unlawful, "which are so constructed as to [not] give a certainuniform and fair return value for each coin deposited therein, and in which there is no element of chance." Of course, a pinball machine in which a five cent coin is inserted and which, if the score exceeds the minimum, gives other free games, does have the element of chance and does not give a certain and uniform
return.
[25] In the Alexander case, supra, construing the above statute, the Supreme Court stated that the fluctuation of the score was an element or contingency dependent upon chance and that the machine so kept was a violation of the Statute. The court also held that the winning of free games upon attainment of a particular score pertained to a game of chance whether it was played for amusement or for money. But, as in the Arkansas cases cited above, the Supreme Court of South Carolina was considering statutes entirely different to those in Missouri.
[26] The District Court of the Western District of South Carolina, in Holliday v. Governor of State of S. C., 78 F.Supp. 918, construing the South Carolina statute, held that a coin-operated, "nonpayout" pinball machine with the free play feature is a gambling device as condemned by that statute.
[27] The court in Steely v. Commonwealth, 291 Ky. 554, 154 S.W.2d 977, was discussing a statute that made it a criminal offense to operate a "machine or contrivance used in betting whereby money or other thing may be won or lost; * * *" Ky.St. § 1960, and held that a free game was included within the phrase "or other thing."
[28] The Supreme Court of New Mexico, in Giomi v. Chase, 47 N.M. 22, 132 P.2d 715, held that under a statute making it unlawful to operate a gambling device "for money or anything of value, in the state of New Mexico", 1941 Comp. § 41-2201, and a pinball machine giving free plays was a gambling device.
[29] The Supreme Court of North Dakota, in Middlemas v. Strutz, Attorney General, 71 N.D. 186, 299 N.W. 589, held that under the lottery statute of North Dakota, Comp. Laws 1913, § 9660, which condemned the distributing of property by chance among persons who have paid or agreed to pay any valuable consideration for the chance, that the giving of free games, as in the case before us, was property within the meaning of the statute. The statutory definition of property in North Dakota included the word "effects" Comp. Laws 1913, § 10369, and the court held that was broad enough to embrace free games. In Gayer v. Whelan, District Attorney, District Court of Appeals of California, 59 Cal.App. 2d 255, 138 P.2d 763, under a lottery statute, Pen. Code, § 319, almost identical with that of North Dakota, it was held that a pinball machine giving free games could not possibly violate the statute.
[30] In Broaddus v. State, 141 Tex.Cr.R. 512, 150 S.W.2d 247, the Court of Criminal Appeals of Texas, in construing a statute that made it a criminal offense to keep for the purpose of gaming any device or any slot machine, regardless of the name or whether named or not, held that the right to continue operation of the machine for amusement made it a gambling device because the statute said it was one "if money or any thing of value is bet thereon." *Page 859 
Vernon's Ann.P.C. art. 619. There too, the statute differed materially from ours.
[31] In People v. Gravenhorst, Sp.Sess., 32 N.Y.S.2d 760, 774, the defendant was charged with possessing a slot machine in violation of Sec. 982 of the Penal Law of New York, Consol. Laws, c. 40. Under that section, it was unlawful to permit the operation of any slot machine or device that was adapted for use in such a way that as a result of the insertion of any coin such machine or device may be operated, and that by reason of any element of chance, the user may become entitled to receive anything ofvalue. It was held that free games given by this machine, after the money had been deposited in it, was a thing of value and the statute had been violated. The court said: "The word `thing' is defined as that which is or may become the object of thought; that which has existence or is concerned or imagined as having existence; any object, substance, attribute, idea, fact, circumstance, event, etc. A thing may be material or ideal, animate or inanimate, actual, possible or imaginary."
[32] It would hardly be expected that this court would hold that a "thing" defined as above, is property. It would be going too far to say that a thing imagined as having existence was property within the statutory definition in Missouri.
[33] A careful reading of the above-cited cases will show that many of them contain dictum and some of them contain philosophical dissertations on the evils of gambling and the development and encouragement of the gambling instinct. See Savoy Vending Co. v. Valentine, 178 Misc. 1, 33 N.Y.S.2d 324. We, too, could philosophize on these subjects, but the policy of legislative enactments is not for the courts. It is for the legislature. We should not "judicially legislate" so as to broaden the plain letter of the statute.
[34] By considering our statutes, we can narrow the issues in this case. It must be borne in mind that we are considering that which comes out of the gambling device and not that which goes in. Section 4675 defines the former and Section 4676 the latter. Each of them however, uses the term "money or property." Section 4173, upon which this petition is based authorizes the condemning and confiscation of any gambling device "prohibited by law" and the only statute defining a gambling device is 4675, which requires it to be some device adapted and designed for the purpose of playing any game of chance for money or property. Of course, a free game is not money, but is it property? This identical question was before the Supreme Court of Kansas in State v. Waite, 156 Kan. 143, 131 P.2d 708, 148 A.L.R. 874. The Kansas Statute provided that the machine must be "devised and designed for the purpose of playing any game of chance for money or property, * * *." G.S. 1935, 21-1508. An information had been filed against the defendant charging him with violating that Section. The evidence showed that the machine gave free games, and only free games, upon the attainment of a certain score. In an exhaustive and well reasoned opinion, the Supreme Court of Kansas unanimously held that a free game was not property. They cited the Kansas statutory definition of property which is more inclusive than ours. If we were considering a statute that merely condemned the keeping of gambling devices without further definition, we could advert to general definitions of that term to ascertain what the legislature meant. But the legislature has not seen fit to leave the definition to the courts. They have specifically stated that before it is a gambling device, it must be designed for the very purpose of paying off in money or property.
[35] In Gayer v. Whelan, District Attorney, Cal. District Court of Appeals, 59 Cal.App. 2d 255, 138 P.2d 763, 768, the court held that free games given by a pinball machine operated by chance was not a violation of a statute that forbade possession and control of a mechanical device that paid off "money, representative or articles of value, checks, or tokens, redeemable in, or exchangeable for money or any other thing of value, * * *." pen. Code, § 330a. In so holding the court said: "Crimes are not to be `built up by courts with the aid of *Page 860 
inference, implication, and strained interpretation'. * * * and `penal statutes must be construed to reach no further than their words; no person can be made subject to them by implication.'"
[36] The following cases from other jurisdictions construe statutory provisions practically identical with ours and hold that a free game or games are not property. These cases are interesting and to the point but an analysis of each would needlessly lengthen this opinion. Washington Coin Machine Ass'n v. Callahan, 79 U.S.App.D.C. 41, 142 F.2d 97. Chicago Patent Corp. v. Genco, Inc., 7 Cir., 124 F.2d 725. Davies v. Mills Novelty Co., 8 Cir., 70 F.2d 424. Commonwealth v. A Certain Gambling Device, 151 Pa.Super. 346, 30 A.2d 357.
[37] In Pennsylvania where the statutes use the words, "money or other property of value" and "money or other valuable thing" 18 P.S. §§ 4603, 4605, it was held that pinball machines giving free games by chance were not illegal. In re Wigton's Return, 151 Pa.Super. 337, 30 A.2d 352. At page 355, of 151 Pa.Super., at page 355 of 30 A.2d, the court said: "Bearing in mind that penal laws must be strictly construed, we are not persuaded that the legislature intended a definition of gambling broad enough to make unlawful, gaming in which the player, in addition to the pleasure of playing, stands to gain nothing but the right to play again without paying for it and the loser to lose nothing but the compulsion to let him play."
[38] See also: Mills Novelty Co. v. Farrell, 2 Cir., 64 F.2d 476, 478, where it was said: "* * * The amusement feature of the machine does not make the machine a gambling device. It arouses interest and perhaps attracts customers to the machine in much the same way as advertising would, but this is lawful."
[39] In State v. Betti, 42 A.2d 640, 641, 23 N.J.Misc. 169, the court held that free games did not constitute a "valuable thing" under a statute making it a criminal offense to keep in one's place of business a gambling device in the nature of a slot machine, "which may be used for the playing of money or other valuable thing, * * *." N.J.S.A. 2:135-2.
[40] In Commonwealth v. Kling, 140 Pa. Super. 68, 13 A.2d 104, 105, it was held that free games or the lure to play for them on a pinball machine was not "a `thing' of value."
[41] Many other cases have been read but nearly all of them construe a statute different in phraseology from ours.
[42] Gambling, as judicially defined, has three necessary elements, (1) consideration or risk, (2) chance and (3) reward or prize. But the legislature has required the third element, when referable to a gambling device, to be "money or property." Does the player get property for his nickel? We think not. It is argued that he gets amusement. The vacuous mind that may momentarily be brightened by finding entertainment and amusement in watching a metal ball meander aimlessly over the surface of an inclined table and finally score by dropping from sight into an aperture therein, would be equally entertained by watching a certain species of scarabaeoid beetle aimlessly roll his putrid ball across the ground and into a hole where eventually it becomes sustenance for itself and young. Would not the entertainment and amusement in each instance be the same though five cents is paid to pull the plunger in the one and in the latter, the propulsion is by the beetle and its accomplishments are not emblazoned upon an electrically lighted scoreboard. The privilege of watching either would certainly not be property, under Section 4675, and we shall not dignify either by holding it to be "a `thing' of value."
[43] If a free game is property or a thing of value, what kind of value has it? Certainly it has no educational or intellectual value. How could watching a rolling ball bounce from peg to pin and then disappear, enrich the mind or broaden one's intellect? After its propulsion by the plunger, gravity moves the balls but that law of physics was discovered by Sir Isaac Newton and became common knowledge more than two centuries ago. Such information is not acquired by inserting a nickel in a pinball machine. From the beetle, one might learn some new fact relating to entomology but nothing from "Jack and Jill." If there *Page 861 
is educational value in either, it preponderates in favor of the beetle. A free play certainly has not the educational value of a picture show, which in addition to entertainment and amusement, brings before the eyes and ears of millions, scenes and descriptions of faraway places, fine acting, historical facts and scientific matters that could be, by them, viewed or heard in no other way. Few modern developments have more educational value than the cinema.
[44] A free game has no physical value such as a game of golf, which by its pleasurable exercise, coupled with fresh air and sunshine develops the muscles, invigorates the body and creates a feeling of physical well being, thereby improving health and prolonging life. No such benefits appear here. To be allowed to do a useless thing free does not make that privilege property or "a `thing' of value" because one has previously paid for doing another such useless thing. There is a vast difference between cost and value. Permission to use a useless device is not property or "a `thing' of value," though the device used cost money to construct.
[45] Does the player receive anything of financial or economic value? Rather isn't this so-called recreation and amusement the antithesis of value? If one's time is worth anything, it is a loss instead of gain, a waste instead of reward. Hope of reward or gain, above the amount risked, is the lodestone of gambling. The fact that one has paid five cents for it does not conclusively fix that, or any other sum, as its value or any value at all.
[46] It may be argued that opportunity to play brings customers to the place of business where such devices are located. Assuming that it does, that "pay off" does not go to the one who risks his nickel and takes the chance. If the only benefit that arises from the keeping of the device goes to the keeper by reason of other potential business transactions of the player, it could hardly be said that the third element of gambling was present. Rather, the first element of gambling is augmented.
[47] The legislature may decide that such a device should be suppressed because it is useless, causes a waste of valuable time and tends to encourage and develop the gambling instinct in the young, an argument that has been advanced, dicta, in many decisions. But until legislation to that effect is enacted, we must construe the statutes as we find them.
[48] The judgment should be reversed and the machine, so seized, returned to claimant. It is so ordered.
[49] BLAIR and McDOWELL, JJ., concur.