STUBBS, et al. *v.* STATE.

In Banc. May 9, 1949.

(40 So. (2d) 256)

486

H. K. Farmer and Edwards & Edwards, for appellants.

R. O. Arrington, Assistant Attorney General, for appellee.

Hall, J.

R. D. Stubbs and twelve other Negroes, appellants here, were convicted in a justice of the peace court upon a charge of engaging in a game of chance, namely, gambling, for money, by shooting dice. Upon appeal to the circuit court they were again convicted and have appealed to this Court.

The locus delicti was in a verdant pine grove, typical of South Mississippi, a short distance from old state highway No. 13,—a significant number since there were

thirteen defendants there assembled; recalling the traditional superstition, confined not alone to the Negro Race, this ill omen should have warned of impending disaster. The time was a tranquil Sunday afternoon in the sultry month of August.

A diligent constable, intent upon upholding the peace and dignity of the State of Mississippi, having learned of this assemblage and being dubious of his ability to cope with the number involved, called upon and ''deputized'' four other people to accompany him to the scene. They approached the unwary and hapless appellants and discerned that they were huddled in a manner similar to that of the players in our popular collegiate game of football but there is no evidence of the presence of the proverbial pigskin. Some of the appellants were in a circle instead of the single wing formation of the gridiron, and were apparently in approximately that position assumed by the linemen when ready for the snap-back; others of the appellants were behind these linemen in what we judge to be the double wing formation of the backfield. The appellant, Tom Newsome, was calling the signals and carrying the ball; at the moment the play was interrupted he was calling for a six and was rolling something out upon the ground which one of the witnesses identified as dice, though no such instrumentality of popular pastime was ever found by the raiders.

There was money upon the ground in front of some of the appellants but not all of them, and those who possessed the coin of the realm thus lavishly displayed were not identified so as to separate them from those who were mere interested spectators. Upon discovery of the presence of ''the law'' the formation broke into a running match, but two skyward shots from the constable's gun brought to a halt all of the players save the fleet-footed appellant, R. D. Stubbs, who had apparently seized the ball from the mass of scrimmage and sprinted over the hill as if running for a touchdown; he did not return for an attempt to convert for the extra point, but

was subsequently apprehended. These, in brief, are the facts disclosed by the postgame cinema.

At the trial the appellants requested a peremptory instruction which was refused by the trial court, and that action is assigned as error.

 At common law no game in itself was unlawful, and gaming was not a crime. 38 C.J.S., Gaming, § 80. There are those who hold to the belief that the Emancipation Proclamation should have embodied a provision guaranteeing to its beneficiaries the unrestrained right to indulge in the game of African Dominoes just as the First Amendment to the Federal Constitution guarantees the rights of freedom of speech and assembly, and, while we are not unduly intolerent toward those who hold such views, we cannot overlook the fact that our legislature has abrogated the common law rule and has enacted a statute which makes it a misdemeanor for any person to encourage, promote or play at any game for money or other thing of value, or to wager or bet, or promote or encourage the wagering or betting of any money or other thing of value upon any game, play, etc. Section 2190, Mississippi Code of 1942.

There seems to be a general misunderstanding among the law enforcement officers in this state as to what is meant by that portion of the statute which makes it unlawful to encourage a game of chance or to encourage the placing of any bet or wager; it is generally accepted in some sections of the state that a mere spectator at a game of chance is by his presence alone, guilty of encouraging the game. We do not so interpret this statute and now take this occasion to clarify it. If such were the rule, then every spectator at the great American game of baseball could be guilty of encouraging a game of chance if it be shown that he knew of some one who had placed a bet upon the game. Strawhern v. State, 37 Miss. 422, 430; Boyd et al v. State, 177 Miss. 34, 170 So. 671.

These appellants, however, are not charged merely with encouraging a game of chance, but are directly charged with engaging therein or playing thereat. ▮▮▮ In cases of this kind we are held to the same rules of evidence that prevail in other criminal prosecutions. A person accused of a gaming offense is presumed innocent until his guilt is established, and the burden is on the prosecution to prove all the facts which' are essential to the guilt of the accused. 38 C.J.S., Gaming, § 125. It is essential to a conviction for gaming that all the elements of the crime be proved beyond a reasonable doubt. 38 C.J.S., Gaming, § 127. Such guilt may, of course, be established by circumstantial evidence, provided it meets the test upon the sufficiency of the evidence.

▮▮▮ Analyzing the testimony, it is shown that Tom Newsome was "rolling the bones" and had money in front of him and that others were present with money on display, and we are of the opinion that this is sufficient to justify the jury in finding that Tom at that moment had a wager upon the play. This is what the statute condemns. It was not necessary for the prosecution to show that the game had proceeded to the point where Tom had realized his heart's desire in throwing a six and had thereby won his bet, or that he had lost by turning up a seven.

▮▮▮ But the prosecution asks that we go further and hold that all the others were also wagering upon this same play. We cannot assume that the thirteen appellants were theretofore engaged in gambling, for it was shown that just a few minutes prior to the raid two white farmers had been at the scene looking for cotton pickers and no gambling was in progress at that time. The whole case presented by the evidence for the state is based upon Tom Newsome's shooting for a six. It is not shown with whom he was betting. Supplementing the description of the game of "craps" as reflected by the record here, and applying thereto our combined meager and insufficient knowledge thereof, we are unable to find

any proof in the record here that all of the appellants were engaged at play in the game or were wagering money thereon. The burden was upon the state to show which of the appellants were engaged in gambling, and the circumstances disclosed by the record here are not sufficient to justify the jury in holding that they were each and all proven guilty beyond every reasonable doubt and to the exclusion of every other reasonable hypothesis. The idea that some of the appellants were mere spectators is just as consistent with the proof as is the idea that all of them were gambling.

Consequently the judgment of the lower court is affirmed as to the appellant, Tom Newsome, but as to the other twelve appellants, the judgment is reversed and they are discharged.

Affirmed in part, and reversed and judgment here in part.