# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
July 15, 2014 Session

## STATE OF TENNESSEE v. BILLY DEAN SIZEMORE

**Direct Appeal from the Circuit Court for Lewis County**
**No. 2010-CR82      Timothy Easter, Judge**

**No. M2013-01853-CCA-R3-CD - Filed November 7, 2014**

A Lewis County Circuit Court Jury convicted the appellant, Billy Dean Sizemore, of delivery of a Schedule II controlled substance, a Class C felony, and the trial court sentenced him as a Range III, persistent offender to fourteen years in confinement.  On appeal, the appellant contends that the evidence is insufficient to support the conviction; that the trial court erred by allowing evidence of a prior bad act in violation of Rule 404(a), Tennessee Rules of Evidence; that the trial court's failure to give the jury a limiting instruction regarding the prior bad act constitutes reversible error; and that the trial court improperly relied on the presentence report showing prior convictions in Florida rather than requiring the State to produce certified copies of the judgments of conviction.  Based upon the oral arguments, the record, and the parties' briefs, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the Court, in which THOMAS T. WOODALL and ALAN E. GLENN, JJ., joined.

Steve M. Garner, Franklin, Tennessee, for the appellant, Billy Dean Sizemore.

Robert E. Cooper, Jr., Attorney General and Reporter; Tracy L. Alcock, Assistant Attorney General; Kim R. Helper, District Attorney General; and Sean Duddy, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I.  Factual Background

Joe Ashmore, a narcotics agent with the 21st Judicial District Drug Task Force, testified that on June 2, 2009, he received a telephone call from Dale Potter, a confidential

informant (CI). Potter told Agent Ashmore that he had been in contact with the appellant and that the appellant claimed to have some pills to sell. Agent Ashmore and Agent Doug Totty met with Potter and Potter's wife, and Mr. Potter placed a recorded, controlled telephone call to the appellant. The State played the recorded call for the jury. During the call, Mr. Potter told the appellant that he wanted to "get a couple of more of them" and agreed to meet the appellant at a bridge near Mr. Potter's house.

Agent Ashmore testified that the agents searched the Potters and their vehicle for money and drugs and that he equipped Mr. Potter with a transmitter and recorder. Agent Ashmore was hoping the Potters would buy three morphine pills from the appellant for $20 each and gave Mr. Potter $60. The Potters went to the location on Fite Road. Agent Ashmore stated that he saw them meet the appellant, who was in a black vehicle, and that the Potters and the appellant conducted the drug transaction, which was recorded. The State played the recording for the jury. During the transaction, the appellant told Mr. Potter, "I got $500 worth yesterday and now I got two left." After the drug buy, the Potters met Agent Ashmore at a predetermined location. Agent Ashmore took possession of two pills and $20. He also searched the Potters and their vehicle again. Agent Ashmore paid Mr. Potter $100 for his participation in the drug buy.

On cross-examination, Agent Ashmore testified that in 2007, he purchased Lortab from Mr. Potter. Mr. Potter pled guilty to a crime and began working as a CI for Agent Ashmore. On June 2, 2009, the appellant sold the Potters two morphine pills and kept two pills for himself. Agent Ashmore said he could not see "hand movements and hand to hands" during the transaction. He also did not see the Potters give any money to the appellant.

On redirect examination, Agent Ashmore testified that it was not uncommon for drug dealers to keep some pills for themselves because many dealers were addicts. Dealers also held back pills in order to deliver them to other customers. On recross-examination, Agent Ashmore acknowledged that he did not hear Mr. Potter's initial conversation with the appellant on June 2.

Deputy Douglas Totty of the Humphreys County Sheriff's Department testified that on June 2, 2009, he worked for the 21st Judicial District Drug Task Force and assisted Agent Ashmore with an investigation of the appellant. Deputy Totty searched the Potters' car before and after the drug transaction but did not find anything. He said he did not hear or see the transaction but kept in constant contact with Agent Ashmore by radio. On cross-examination, Deputy Totty testified that he was "in the vicinity" of the transaction and was present to assist Agent Ashmore in case "something went bad."

Glen J. Glenn, a special agent forensic scientist with the Tennessee Bureau of

Investigation (TBI), testified that he analyzed the two pills received by Agent Ashmore. He determined that the pills were morphine, a Schedule II controlled substance.

Dale Potter testified that in 2001, he was convicted of failure to appear and simple possession of marijuana. He received probation for the latter offense but violated probation by failing to pay fines. In October 2007, Mr. Potter was charged with felony delivery of a drug but was convicted of a misdemeanor because he agreed to work as a CI. He received probation for the conviction but violated his probation, again due to nonpayment of fines.

Mr. Potter testified that on June 2, 2009, he telephoned the appellant, whom he had met "through a friend of a friend," to find out if the appellant had any pills. The appellant said he did, so Mr. Potter telephoned agents at the drug task force and told them that he would be able to make a drug buy. Mr. Potter and his wife met with Agent Ashmore, and Agent Ashmore searched them and "put a wire" on Mr. Potter. Mr. Potter telephoned the appellant and arranged to meet him on Fite Road. Mr. Potter said that he was supposed to buy three 60-milligram morphine pills from the appellant for $20 each and that Agent Ashmore gave him $60.

Mr. Potter testified that he and his wife went to the location and that the appellant was there in a black Lincoln Continental. The appellant told Mr. Potter that he had purchased $500 worth of pills the previous day and had only four remaining. Mr. Potter asked to buy three pills, but the appellant wanted to keep two for himself, so Mr. Potter bought two pills, leaving the appellant with two pills. Mr. Potter gave $40 to the appellant, and the appellant put the money into his wallet. Mr. Potter returned to the agents and gave them the two pills and the remaining $20. Mr. Potter said he had not received anything from the State in exchange for his testimony.

On cross-examination, Mr. Potter testified that the agents did not pay him anything on June 2 and that he participated in the drug buy "just . . . to be doing it." Defense counsel showed Mr. Potter a document from the drug task force, showing that Mr. Potter had received $100, and Mr. Potter stated, "I didn't recall getting paid for it." He said he had known the appellant five or six months at the time of the buy but did not know where the appellant lived. He stated that he had been taking prescribed 100-milligram morphine pills for seven or eight years due to back pain but that he had never seen 60-milligram morphine pills prior to that day.

Kelly Potter, Dale Potter's wife, testified that on June 2, 2009, she worked as a CI for Agent Ashmore's investigation of the appellant and was responsible for driving her husband, who did not have a driver's license, to meet the appellant. Before the drug buy, the Potters met with drug task force agents, and the agents searched Mrs. Potter and her car. At first,

Mrs. Potter said the agents "wired" her and her husband. However, she later stated that the agents may not have put a wire on her.

Mrs. Potter testified that she drove her husband to the end of Fite Road and that he got out to meet the appellant. Mrs. Potter remained in her car but could hear and see the transaction. She said that her husband gave money to the appellant and that the appellant "handed" him "two orange morphine 60s." After the transaction, the Potters met with Agent Ashworth. Mr. Potter gave the two pills and the remaining $20 to Agent Ashworth, and the agents searched Mrs. Potter and her car again.

Mrs. Potter testified that in July 2011, she was convicted of DUI involving prescribed medication and driving on a revoked license. She was sentenced to probation and completed probation. She said that she was testifying under subpoena in the present case and that she was not receiving anything from the State in exchange for her testimony.

On cross-examination, Mrs. Potter testified that her husband had been taking prescribed morphine for eleven years and that he used to take 60-milligram pills. Therefore, she recognized the 60-milligram pills on June 2.

At the conclusion of Mrs. Potter's testimony, the State rested its case. The appellant did not present any proof, and the jury convicted him as charged of delivering a Schedule II controlled substance, a Class C felony. After a sentencing hearing, the trial court sentenced him as a Range III, persistent offender to fourteen years in confinement.

A. Sufficiency of the Evidence

The appellant claims that the evidence is insufficient to support the conviction. He contends that his statement that "I got $500 worth yesterday and now I got two left" was inadmissible and that, without the statement, the proof was "overwhelming evidence of a casual exchange." The State argues that the evidence is sufficient. As we will discuss in the next section, the appellant's statement was admissible. Therefore, we conclude that the evidence is sufficient to support the conviction.

When an appellant challenges the sufficiency of the convicting evidence, the standard for review by an appellate court is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); Tenn. R. App. P. 13(e). The State is entitled to the strongest legitimate view of the evidence and all reasonable or legitimate inferences which may be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Questions concerning the credibility of witnesses and

the weight and value to be afforded the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact. State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). This court will not reweigh or reevaluate the evidence, nor will this court substitute its inferences drawn from the circumstantial evidence for those inferences drawn by the jury. Id. Because a jury conviction removes the presumption of innocence with which a defendant is initially cloaked at trial and replaces it on appeal with one of guilt, a convicted defendant has the burden of demonstrating to this court that the evidence is insufficient. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

A guilty verdict can be based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. State v. Hall, 976 S.W.2d 121, 140 (Tenn. 1998). "The jury decides the weight to be given to circumstantial evidence, and '[t]he inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the jury.'" State v. Rice, 184 S.W.3d 646, 662 (Tenn. 2006) (quoting State v. Marable, 203 Tenn. 440, 313 S.W.2d 451, 457 (Tenn. 1958)). "The standard of review 'is the same whether the conviction is based upon direct or circumstantial evidence.'" State v. Dorantes, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting State v. Hanson, 279 S.W.3d 265, 275 (Tenn. 2009)). Moreover, "[t]he standard by which the trial court determines a motion for judgment of acquittal at the end of all the proof is, in essence, the same standard which applies on appeal in determining the sufficiency of the evidence after a conviction." State v. Thompson, 88 S.W.3d 611, 614-15 (Tenn. Crim. App. 2000).

Tennessee Code Annotated section 39-17-417(a)(2) provides that it is an offense to knowingly deliver a controlled substance. "'Deliver' or 'delivery' means the actual, constructive, or attempted transfer from one person to another of a controlled substance, whether or not there is an agency relationship." Tenn. Code Ann. § 39-17-402(6). Generally, a person "acts knowingly with respect to the conduct or to circumstances surrounding the conduct when the person is aware of the nature of the conduct or that the circumstances exist." Tenn. Code Ann. § 39-11-302(b). Morphine is a Schedule II controlled substance. Tenn. Code Ann. § 39-17-408(b)(1)(N). A violation of 39-17-417 subsection (a) with respect to a Schedule II controlled substance, other than cocaine or methamphetamine, is a Class C felony. Tenn. Code Ann. § 39-17-417(b).

During closing arguments, defense counsel argued that the transaction was a case of casual exchange, and the trial court gave an instruction on casual exchange to the jury. Tennessee Code Annotated section 39-17-418 provides, "It is an offense for a person to knowingly possess or casually exchange a controlled substance, unless the substance was obtained directly from, or pursuant to, a valid prescription or order of a practitioner while acting in the course of professional practice." Tennessee Code Annotated section 39-17-419

sets out the following inference:

> It may be inferred from the amount of a controlled substance or substances possessed by an offender, along with other relevant facts surrounding the arrest, that the controlled substance or substances were possessed with the purpose of selling or otherwise dispensing. It may be inferred from circumstances indicating a casual exchange among individuals of a small amount of a controlled substance or substances that the controlled substance or substances so exchanged were possessed not with the purpose of selling or otherwise dispensing in violation of the provisions of § 39-17-417(a). The inferences shall be transmitted to the jury by the trial judge's charge, and the jury will consider the inferences along with the nature of the substance possessed when affixing the penalty.

"The exchange of a controlled substance, including a transaction where money is exchanged for the controlled substance, is 'casual' when it is without design." State v. Jeremy Taylor, No. E2000-01724-CCA-R3-CD, 2001 Tenn. Crim. App. LEXIS 258, at *9 (Knoxville, Apr. 10, 2001) (citing State v. Helton, 507 S.W.2d 117, 120 (Tenn. 1974)).

Taken in the light most favorable to the State, the evidence shows that on June 2, 2009, Mr. Potter contacted the appellant and asked if he had any pills to sell. The appellant said yes. Mr. Potter informed Agent Ashmore about the potential drug buy, and Agent Ashmore equipped him with a recording device, searched him and his wife, and gave him $60 in order to buy three morphine pills from the appellant. Mr. Potter telephoned the appellant, they agreed to meet on Fite Road, and the Potters went to the meeting place. There, the appellant informed Mr. Potter that he had only two pills to sell because he wanted to keep two pills for himself. Mr. Potter gave the appellant $40, and the appellant gave Mr. Potter two pills. Agent Ashmore listened to and recorded the transaction, and the State played the recording for the jury. After the transaction, Mr. Potter gave the pills and remaining $20 to Agent Ashmore, and TBI testing confirmed that the pills were morphine. Although the appellant claims that the transaction was a casual exchange, the jury could conclude from the evidence, particularly his statement about having $500 worth of pills the day before the transaction, that he knowingly delivered the pills to the appellant as part of a drug sale rather than casually exchanged them. Therefore, the evidence is sufficient to support the conviction.

## B. Prior Bad Act

The appellant contends that the trial court erred by allowing into evidence his statement that "I got $500 worth yesterday and now I got two left." The appellant claims that the statement involved a prior bad act and, therefore, was inadmissible pursuant to Rule 404(b), Tennessee Rules of Evidence. He also claims that the trial court's error was not harmless because the State played the recorded statement repeatedly for the jury. The State argues that the appellant's statement was not evidence of a prior bad act and not subject to Rule 404(b) analysis because he was "explaining the circumstances of how he had a certain amount of pills on the previous day, but he never stated that a prior bad act occurred." The State also argues that, in any event, the trial court correctly ruled that the statement was admissible to show the appellant's intent and motive and to tell the "full story." We conclude that the trial court did not err.

Before trial, the appellant filed a motion limine, requesting that the trial court prohibit the State from introducing into evidence two statements made by him to Mr. Potter on June 2. In the first statement, the appellant told Mr. Potter that "I got $500 worth yesterday and now I got two left." In the second statement, the appellant told Mr. Potter that "I will have 100 mg blues Thursday if you need more." During a hearing on the morning of trial, the State argued that because defense counsel was likely to argue that the transaction was a casual exchange, the statements were admissible to show the appellant's intent and motive. The appellant claimed that the statements were not admissible to show his intent because the crime required that he acted knowingly, not intentionally, and because the statements were highly prejudicial. The trial court ruled that the second statement, which involved "future potential criminal conduct," was inadmissible but that the first statement, which involved past conduct, was relevant "as it relates to intent, motive, and telling the jury the full story here."

Tennessee Rule of Evidence 404(b) provides,

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity with the character trait. It may, however, be admissible for other purposes. The conditions which must be satisfied before allowing such evidence are:
>
> (1) The court upon request must hold a hearing outside the jury's presence;
>
> (2) The court must determine that a

material issue exists other than conduct
conforming with a character trait and must upon
request state on the record the material issue, the
ruling, and the reasons for admitting the evidence;

(3) The court must find proof of the other
crime, wrong, or act to be clear and convincing;
and

(4) The court must exclude the evidence if
its probative value is outweighed by the danger of
unfair prejudice.

See also State v. Thacker, 164 S.W.3d 208, 240 (Tenn. 2005); State v. Parton, 694 S.W.2d
299, 302 (Tenn. 1985). A trial court's decision regarding the admission of Rule 404(b)
evidence will be reviewed under an abuse of discretion standard; however, "the decision of
the trial court should be afforded no deference unless there has been substantial compliance
with the procedural requirements of the Rule." State v. DuBose, 953 S.W.2d 649, 652 (Tenn.
1997).

Generally, "[o]nly in an exceptional case will another crime, wrong, or bad act be
relevant to an issue other than the accused's character. Such exceptional cases include
identity, intent, motive, opportunity, or rebuttal of mistake or accident." State v. Luellen, 867
S.W.2d 736, 740 (Tenn. Crim. App. 1992). In making its decision regarding the admissibility
of the testimony, the trial court must first determine if the offered testimony is relevant to
prove something other than the appellant's character. "The jury may consider evidence
admitted under 404(b) as substantive evidence at trial." State v. Kiser, 284 S.W.3d 227, 288
(Tenn. 2009).

Regarding the State's claim that the appellant's statement was not evidence of a prior
bad act, we disagree. The appellant's saying that he "got $500 worth [of pills] yesterday and
now I got two left" could certainly be construed as evidence that he had been selling pills.
Therefore, the appellant's statement was subject to 404(b) analysis.

Turning to the trial court's ruling, defense counsel argued during closing arguments
that this case involved a casual exchange between two addicts, and the trial court instructed
the jury on casual exchange. Therefore, the appellant's statement was highly relevant to
prove that he acted intentionally on June 2 and to dispel any inference that he possessed such
a small amount of pills for the purpose of casually exchanging them. Moreover, in order to
prove that the appellant delivered a Schedule II controlled substance, the State was required

to show that he acted knowingly. We note that a jury's finding that a defendant acted intentionally necessarily establishes that the defendant acted knowingly. See Tenn. Code Ann. § 39-11-301(a)(2). Therefore, we conclude that the trial court did not err by ruling that the statement was admissible.

The appellant also claims that the trial court failed to find that proof of the prior bad act was clear and convincing. However, during the jury-out hearing, the trial court asked the prosecutor if the appellant's two statements were "on the tape somewhere." The State advised the court that the statements were on the recording and that the appellant made the statements "on his own volition unsolicited by the CI." The trial court did not further question the proof. Although the trial court did not specifically address whether it found proof of the other crime, wrong, or act to be clear and convincing, we can infer that the trial court did so.

## C. Limiting Instruction

In a related argument, the appellant contends that the trial court committed reversible error by failing to give a limiting instruction regarding its consideration of the Rule 404(b) evidence. The State argues that the appellant waived this issue because he failed to make a contemporaneous objection to the trial court's jury instructions and failed to raise the issue in his motion for new trial. We agree with the State.

After the trial court ruled that the appellant's prior bad act statement was admissible, the court advised defense counsel that it was going to "fashion a charge . . . that will tell the jury that they are to consider the evidence only for those purposes and nothing else." However, the trial court never gave the instruction.

"To minimize the impact of other act evidence and to ensure the jury does not misuse it, the trial court should instruct the jury on the proper use of the evidence." Neil P. Cohen et al., Tennessee Law of Evidence § 4.04[8][i] (6th ed. 2011) (citing State v. Fisher, 670 S.W.2d 232 (Tenn. Crim. App. 1983); State v. Gilley, 297 S.W.3d 739, 758 (Tenn. Crim. App. 2008)). Although the trial court stated that it would give such a limiting instruction, the trial court apparently forgot to do so. Nevertheless, at the conclusion of the State's case, the trial court discussed the jury charge with the parties, and defense counsel stated, "I guess at this point I'm fine with it." The trial court then stated, "I always ask the attorneys any special requests. If you see something I didn't hit[.]" Defense counsel said he would review the instructions, and the trial court stated, "You can bring it up, and we may debate it and then charge it in the morning." The next morning, defense counsel advised the court that he "[had gone] through the jury charge last night" and requested that the trial court give the pattern jury instruction for "no sympathy or prejudice by the jury." The trial court agreed to

give the pattern instruction, and the State began its closing argument.

The trial court gave defense counsel an opportunity to review the charge and then raise "something I didn't hit." Counsel reviewed the jury instructions but did not remind the court to include the limiting instruction. Therefore, under these circumstances, we agree with the State that the appellant has waived the issue. See Tenn. R. App. P. 36(a) (providing that "[n]othing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error"). Additionally, the appellant failed to raise the issue in his motion for new trial. It is well-settled that the failure to raise an issue of error, other than sufficiency of the evidence or sentencing, in a motion for a new trial waives that issue for purposes of appellate review. See Tenn. R. App. P. 3(e). Given the strength of the State's case, we discern no plain error. See Tenn. R. App. P. 36(b).

D. Judgments of Conviction

The appellant contends that the trial court erred by considering Florida convictions listed in his presentence report because the report was not reliable hearsay. The State argues that the trial court did not err. We agree with the State.

Before trial, the State filed a notice of intent to seek enhanced punishment against the appellant as a career offender. In the notice, the State listed the following Florida convictions: (1) burglary, possession of burglary tools, battery of a police officer, and resisting arrest with violence with a conviction date of September 7, 1990, and a five-year sentence; (2) grand theft of property valued more than $300 but less than $20,000 and obstruction of a criminal investigation with a conviction date of September 7, 1990, and a five-year sentence; (3) bribery with a conviction date of February 15, 1991, and a four-year sentence; (4) trafficking in stolen property with a conviction date of June 5, 1991, and a four-year sentence; (5) battery of a law enforcement officer with a conviction date of September 10, 1991, and a sentence of three years, six months; and (6) grand theft of property valued more than $300 but less than $20,000 with a conviction date of April 24, 2000, and a sentence of one year, one day. The notice also listed the following Tennessee convictions: (7) Sale of a Schedule II drug, a Class C felony, with a conviction date of November 22, 2004; (8) sale of a Schedule II drug, a Class C felony, with a conviction date of November 22, 2004; (9) possession of a Schedule VI substance with intent to sell or deliver, a Class E felony, with a conviction date of December 8, 2004; and (10) theft of property valued more than $1,000, a Class D felony, with a conviction date of August 20, 2009. All of the convictions were relisted in the appellant's presentence report.

At the appellant's sentencing hearing, the State moved to introduce the presentence

-10-

report into evidence, and defense counsel objected, stating, "I'd like to see if the State has certified copies of the Florida convictions." The State responded that it was not required to provide certified copies for convictions contained in a presentence report. The trial court overruled the appellant's objection and received the presentence report into evidence.

During the hearing, the State argued that the lengths of the sentences for the first four Florida convictions "are all within a period that is the same as a Class C felony here in Tennessee" and that the appellant qualified "at least as a persistent offender." The trial court noted that in order to qualify as a career offender pursuant to Tennessee Code Annotated section 40-35-108, the appellant had to have "at least a combination of six or more A, B's, or C's, and the record just does not support that." The trial court then noted that in order to qualify as a persistent offender pursuant to Tennessee Code Annotated section 40-35-107, the appellant had to have received "any combination of five or more prior felonies within the conviction class or higher, or within the next two lower felony classes." The trial court noted that Tennessee convictions 7 and 8 were Class C felonies and that Tennessee convictions 9 and 10 were Class D and E felonies. The trial court found that Florida convictions 1, 2, 3, and 6 qualified as C, D, or E felonies in Tennessee, "thus giving us the prerequisite number of five or more prior felony convictions, that makes his sentence as a persistent offender appropriate." The trial court noted that the range of punishment for a Range III, persistent offender convicted of a Class C felony was ten to fifteen years and sentenced the appellant to fourteen years to be served in confinement and consecutively to a prior twelve-year sentence. See Tenn. Code Ann. § 40-35-112(c)(3).

At the appellant's motion for new trial hearing, Jerry Grohowski of the Tennessee Department of Correction testified that he prepared the appellant's presentence report. In preparing the report, Grohowski reviewed a previous presentence report written by a probation officer in Perry County, Tennessee. That officer also gave Grohowski a copy of the appellant's criminal record from Florida "that was taken from the Department of Corrections in Florida, from their portal." Grohowski said that he "looked on the computer to make sure [the convictions] were the same" but that he did not ask the Florida Department of Corrections for certified copies of any judgments. He said that according to the Florida Department of Corrections's website, the Department "makes no guarantee as to the accuracy or completeness of the information contained" on the website. Grohowski acknowledged that the statement was a disclaimer as to the accuracy of the website.

On cross-examination, the State asked Grohowski how often he relied on "portals like this" to prepare a presentence report. He answered, "Very seldom. But very seldom do I run into this kind of a record situation and a report that was complete and as accurate as the one that was in Perry County." He said he had no reason to believe that the information in the appellant's presentence report was inaccurate. At the conclusion of Grohowski's testimony,

defense counsel stated that "case law keeps referencing that the pre-sentence report is reliable" but maintained that the State should be required to provide certified copies of the Florida judgments of conviction. The trial court disagreed, stating, "I'm satisfied that the record established that he is a persistent offender Range 3."

The appellant contends that the trial court's reliance on the presentence report, which included information based on the Florida Department of Corrections's website, "flies in the face" of [Tennessee Code Annotated section] 40-35-209. We disagree with the appellant. Tennessee Code Annotated section 40-35-209(b) provides that in a sentencing hearing, reliable hearsay is admissible as long as a defendant "is accorded a fair opportunity to rebut any hearsay evidence so admitted." Moreover, "[t]his court has consistently held the presentence report to be reliable hearsay." State v. Adams, 45 S.W.2d 46, 59 (Tenn. Crim. App. 2000). In this case, the State notified the appellant even before the trial that it would be seeking enhanced punishment based upon the Florida convictions. The convictions were included in the presentence report, the appellant objected at the sentencing hearing, and the trial court afforded him a fair opportunity to rebut the evidence. The appellant did not contest the validity of the prior convictions and complained only that certified copies of the judgments had not been provided. He also does not contest the validity of the prior convictions on appeal. Therefore, we conclude that he is not entitled to relief.

### III.  Conclusion

Based upon the oral arguments, the record, and the parties' briefs, we affirm the judgment of the trial court.

_____
NORMA McGEE OGLE, JUDGE