IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs July 16, 2019

**STATE OF TENNESSEE v. LARRY SEXTON**

**Appeal from the Circuit Court for Lawrence County**
**No. 33355    Robert L. Jones, Judge**

———————————————————

**No. M2018-00874-CCA-R3-CD**

———————————————————

A Lawrence County Circuit Court Jury convicted the Appellant, Larry Sexton, of aggravated statutory rape, a Class D felony, and the trial court sentenced him as a Range III, career offender to twelve years in confinement.  On appeal, the Appellant contends that the trial court erred by allowing the State to reopen its proof after he moved for a judgment of acquittal and by sentencing him as a career offender.  Based upon the record and the parties' briefs, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which THOMAS T. WOODALL and ALAN E. GLENN, JJ., joined.

M. Wallace Coleman, Jr., Lawrenceburg, Tennessee, for the appellant, Larry Sexton.

Herbert H. Slatery III, Attorney General and Reporter; Renee W. Turner, Senior Assistant Attorney General; Brent A. Cooper, District Attorney General; and Gary Howell and Christie Thompson, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

**I.  Factual Background**

In July 2015, the Lawrence County Grand Jury filed a two-count indictment, charging the Appellant with rape and contributing to the delinquency of a minor.  The State later indicted him for aggravated statutory rape and nolle prosequied the first two counts.  The Appellant went to trial for aggravated statutory rape in November 2017.

At trial, the victim's mother testified that in May 2015, she was living in Loretto with her son and two daughters, one of whom was the victim. The victim was born in April 1999 and was sixteen years old. On the night of May 9, the victim's mother and her children were at their home. Jimmy Joyner and his son, Bryce, also were there. At some point, the Appellant arrived in his new pickup truck. The victim's mother said that she had known the Appellant for two years, that he was a friend, and that his daughter was about one year older than the victim. The victim and the Appellant's daughter went to the same high school and spent the night at each other's houses from time to time.

The victim's mother testified that the Appellant offered to take Bryce[1] and the victim for a ride in his truck. The three of them left in the truck and were gone fifteen to twenty minutes. When they returned, the victim's mother, Jimmy, and Bryce decided to go to The Cowpen in St. Joe's to play pool. The Appellant was still at the house when they left, but he was getting ready to leave.

The victim's mother testified that she drove to The Cowpen. However, no one was there, so she drove across the street to Parker's bar. Only a few cars were in the bar's parking lot, so she decided to show Bryce some land she owned on Union Hill Road. The victim's mother and the Joyners left Parker's bar about 11:20 p.m., and the drive to the property took about twenty-five minutes. When they arrived at the property, the victim's mother drove toward a shed that she used as a cabin. The cabin had a deck on it. The victim's mother saw the front of the Appellant's truck turned toward the cabin, and the truck's headlights were shining on the deck. The victim was lying on her back on the deck, and the Appellant was on top of the victim. They were not wearing any clothes. The victim's mother said that the Appellant "spun off" the victim and headed toward his truck and that she assumed he was going to get some clothing. The victim's mother got out of her vehicle and "took off after him." She said that she hit him more than one time and that she "called him all kinds of names."

The victim's mother testified that Bryce helped the victim get into her mother's vehicle. The victim's mother said that the victim was "somewhat incoherent" and that "[y]ou could tell she was intoxicated and she just wouldn't answer us." The victim was not intoxicated when her mother and the Joyners left to go to The Cowpen.

The victim's mother testified that the Appellant got dressed and started saying he was sorry. He got into his truck, the victim's mother got into her vehicle, and the victim's mother called 911. The Appellant drove away, and the victim's mother drove back to Union Hill Road to wait for the police. She saw the Appellant's truck pull into a driveway on Union Hill Road, so she blocked his truck with her vehicle. She said she

---

[1] Because the Joyners share a surname, we will refer to them by their first names for clarity.

"tried to jerk him out of the truck" and "scratched out at his eyes." The police arrived ten to fifteen minutes later.

On cross-examination, the victim's mother acknowledged that the victim had two Facebook pages. One of the pages was still accessible to viewers, but the victim no longer used the page. The page showed the victim's birthdate as April 13, 1990. The second page was the victim's active Facebook page and showed her birthdate as April 13, 1996. The victim's mother said that sometime in April 2015, she rode with the Appellant to a friend's house. She denied having a sexual relationship with him.

The victim's mother testified that beer was in her home and that she began drinking beer about 11:00 p.m. on May 9, 2015. She said that she did not see the victim drink any alcohol and denied telling the police that she allowed the victim to consume vodka that night.

Sergeant Timothy Vess of the Lawrence County Sheriff's Department (LCSD) testified that just before midnight on May 9, 2015, he responded to a call on Union Hill Road about a juvenile female who had been sexually assaulted. When Sergeant Vess arrived, the victim's mother was yelling at the Appellant, who was sitting in his truck and was wearing only a pair of shorts. Sergeant Vess separated the victim's mother and the Appellant and asked the Appellant if he had had sex with the victim. The Appellant said yes but that he did not know she was underage. Sergeant Vess called an ambulance for the victim but did not speak with her.

Heather Wilson testified that she was a registered nurse at Crockett Hospital. In the early morning hours of May 10, 2015, Wilson was called to the emergency room and was present while a doctor collected evidence from the victim for a sexual assault kit. The evidence consisted of a blood sample, vaginal swabs, oral swabs, and pubic hair combings. The victim's underwear was not with her and was collected at the scene of the alleged assault. Wilson said that the victim attempted to walk to the bathroom and that the victim was "very wobbly." The victim also was "very sleepy the entire time."

Investigator Jeff Dunn testified that on May 9, 2015, he was a criminal investigator with the LCSD and responded to the scene on Union Hill Road. An ambulance was leaving with the victim as he arrived. Investigator Dunn learned that the alleged assault had occurred at another location, so he and two other officers went "just a short distance down the road." Investigator Dunn saw a wood outbuilding with a porch. Two blankets, some clothing, and what appeared to be a used condom were on the porch. He also saw a used condom wrapper and a box of condoms that had been "ripped open." The box was supposed to contain three condoms, but only two wrapped condoms were in the box.

Investigator Dunn testified that he swabbed the inside and the outside of the used condom. He later collected oral swabs from the victim and the Appellant and sent all of the swabs to the Tennessee Bureau of Investigation (TBI) Crime Laboratory. He also collected the victim's sexual assault kit and sent it to the TBI. Investigator Dunn tried to talk with the victim that night, but she was unable to give him any information about the incident.

Heather Lenzy of the TBI Crime Laboratory testified as an expert in forensic biology and analysis that she analyzed the evidence collected in this case and that the condom found on the porch was not suitable for analysis because it was "covered in mold." She analyzed the swab of the outside of the condom, and the swab was negative for semen. The swab of the inside of the condom showed the presence of semen but not sperm. She stated that finding semen without sperm was not unusual and could be explained by a vasectomy, a low sperm count, or "a very small amount of semen" in the condom. The oral and vaginal swabs from the victim's sexual assault kit did not show the presence of semen.

Carrie Schmittgen, a special agent forensic scientist with the TBI, testified as an expert in forensic biology that she analyzed the condom swabs for DNA. DNA on the swab of the outside of the condom matched the victim, and DNA on the swab of the inside of the condom matched the victim, the Appellant, and an unknown individual. Agent Schmittgen acknowledged that the presence of DNA from a third person could have resulted from the swab's collection process. On cross-examination, Agent Schmittgen acknowledged that the Appellant's DNA was not on the swab of the outside of the condom.

The State recalled Investigator Dunn to the stand. According to the Appellant's driver's license information, he was born in March 1972.

The jury found the Appellant guilty of aggravated statutory rape, a Class D felony. After a sentencing hearing, the trial court sentenced him as a Range III, career offender to twelve years to be served at sixty percent release eligibility.

## II. Analysis

### A. Recall of Investigator Dunn

The Appellant contends that the trial court erred by allowing the State to reopen its proof after he moved for a judgment of acquittal so that Investigator Dunn could testify about his age. The State argues that the trial court acted within its discretion when it

allowed the State to recall Investigator Dunn and that, in any event, the proof was sufficient to show that the Appellant was much older than the victim. We conclude that the trial court did not abuse its discretion by allowing the State to reopen its proof.

At the conclusion of Agent Schmittgen's testimony, the trial court dismissed the jury for the day, and the State advised the court that it did not intend to call any additional witnesses. When court resumed the next day, the trial court asked the prosecutor "if the State was, in fact, resting its proof-in-chief," and the prosecutor responded, "[W]e are, Judge." At that point, defense counsel made a motion for judgment of acquittal on the basis that the State failed to present any proof of the Appellant's age, which was a necessary element of aggravated statutory rape. Defense counsel argued, "They must prove Mr. Sexton is at least ten years older than the victim, and in this case, they have not done so."

The prosecutor responded that he thought the victim's mother testified about the Appellant's age but that he would recall Investigator Dunn to the stand "out of an abundance of caution." Defense counsel asserted that the trial court should not allow the State to reopen its proof "because the State just rested." The prosecutor noted that "we haven't announced to the jury that we've rested" and contended that the trial court should allow the State to reopen its proof so that the State could have Investigator Dunn testify about the Appellant's age from the Appellant's driver's license. The prosecutor noted, "And there's certainly circumstantial evidence already in the record. [The victim's mother] testified that [the Appellant] had a daughter that was one-year older than her daughter. So unless he had that daughter at the age of nine, he would be at least ten years older than [the victim]."

The trial court ruled that the "official resting of the case" had to occur in the presence of the jury and that the State could recall Investigator Dunn to the stand. The State recalled Investigator Dunn, and he testified that information from the Appellant's driver's license showed the Appellant was born in March 1972. At the conclusion of his testimony, the State pronounced that it was resting its case-in-chief.

"Aggravated statutory rape is the unlawful sexual penetration of a victim by the defendant, or of the defendant by the victim when the victim is at least thirteen (13) but less than eighteen (18) years of age and the defendant is at least ten (10) years older than the victim." Tenn. Code Ann. § 39-13-506(c). Thus, the State was required to prove that the Appellant was at least twenty-six years old on May 9, 2015.

Initially, we disagree with the trial court's determination that the State had not closed its proof when it requested to recall Investigator Dunn to the stand. After Agent Schmittgen's testimony, the State advised the trial court that it did not intend to call any

additional witnesses. The next morning, the State advised the trial court that it was resting its case-in-chief. Based on the State's assertions, defense counsel made, and the trial court entertained, a motion for judgment of acquittal. Therefore, in our view, the State had closed its proof even though it had not done so formally in front of the jury. See Tenn. R. Crim. P. 29(b) (providing that defendant may make a motion or trial court may order judgment of acquittal "after the evidence on either side is closed"); State v. James, 315 S.W.3d 440, 455 (Tenn. 2010) (providing that Rule 29(b) "empowers the trial judge to direct a judgment of acquittal when the evidence is insufficient to warrant a conviction either at the time the [S]tate rests or at the conclusion of all the evidence").

This court has observed that "the decision of whether to reopen the proof for further evidence is within the discretion of the trial court, and the decision of the trial court will not be set aside unless there is a showing that an injustice has been done." State v. Brock, 940 S.W.2d 577, 580 (Tenn. Crim. App. 1996). Here, the trial court allowed the State to recall Investigator Dunn briefly in order to present additional proof of the Appellant's age. As noted by the State, the State already had presented circumstantial evidence that the Appellant was at least ten years older than the victim. Specifically, the victim's mother had testified that the Appellant's daughter was in high school and was about one year older than the sixteen-year-old victim, and the jury was able to view the Appellant in the courtroom.[2] Thus, we are unable to conclude that the trial court abused its discretion or that an injustice was done to the Appellant.

## B. Career Offender

The Appellant claims that the trial court erred by sentencing him as a career offender. The State argues that the trial court did not err. We agree with the State.

On November 17, 2017, the State filed a notice of intent to seek enhanced punishment as a career offender pursuant to Rule 12.5, Tennessee Rules of Criminal Procedure. The notice listed the following felony convictions for the Appellant from the Nineteenth Circuit Court of St. Lucie County, Florida: (1) "Larceny X 5," burglary of a conveyance, and possession of burglary tools with a conviction date of July 26, 1994; (2) burglary of a conveyance and damage to property with a conviction date of January 17, 1995; (3) burglary of a dwelling with a conviction date of February 3, 1997; (4) grand theft of a motor vehicle committed on October 8, 1998, with a conviction date of December 30, 1998; and (5) grand theft of a motor vehicle committed on November 13, 1998, with a conviction date of December 30, 1998. The notice also listed attempted

---

[2] We note that at the outset of trial, prior to the jury's entering the courtroom, the trial court commented, "I assume, just by looking at Mr. Sexton, and from the date of his birth alleged in the indictment, that there's no way the jury could conclude that he's less than ten years [older than the victim]."

- 6 -

bribery of a witness with a conviction date of April 5, 2017, in the Lawrence County Circuit Court.

At the Appellant's January 4, 2018 sentencing hearing, the State introduced his presentence report into evidence. Defense counsel objected to the admission of the report on hearsay grounds, but the trial court overruled the objection. According to the report, the then forty-five-year-old Appellant was married and had one daughter, one son, and two stepsons. The Appellant told the investigating officer who prepared the report that he graduated from Westwood High School in St. Lucie, Florida. However, when the officer contacted Melodie Golden in the attendance office at Westwood, Golden reported that the Appellant dropped out of Westwood after the ninth grade and did not attend any other high school in the St. Lucie School District. In the report, the Appellant described his physical health as "good" and his mental health as "fair" and stated that he began drinking alcohol when he was fifteen years old but stopped drinking in 2014. The Appellant denied using any nonprescription or illegal drugs and said that he had been the "owner/operator" of Sexton Truck Company since 1996.

The report showed that the Appellant began committing crimes when he was twenty-one-years old and that he had numerous prior felony and misdemeanor convictions in St. Lucie, Florida, and Lawrence County, Tennessee. Of the prior convictions in the report, the State advised the trial court that it was relying on the following convictions in St. Lucie, Florida, to establish the Appellant's status as a career offender: two convictions on December 30, 1998, for grand theft of a vehicle; a conviction on February 3, 1997, for burglary of a dwelling; a conviction on January 17, 1995, for burglary of a conveyance; and a conviction on July 26, 1994, for grand larceny. The State also advised the trial court that it was relying on a September 6, 1989 conviction in St. Lucie, Florida, for escape, which was not listed in the presentence report. For the six convictions, the State introduced into evidence photocopies of certified judgments of conviction. The State advised the trial court that it had introduced the original certified judgments of conviction into evidence at another sentencing hearing for the Appellant on April 5, 2017, and requested that the trial court take judicial notice of the originals from the previous hearing. The Appellant objected to the documents as hearsay, but the trial court overruled the objection. Finally, the State introduced into evidence a certified judgment of conviction from the Lawrence County Circuit Court for a 2017 conviction of attempted bribery of a witness, a Class D felony. The State argued that based on the Appellant's seven prior felony convictions, he qualified as a career offender.

The trial court noted that aggravated statutory rape was a Class D felony and that the Appellant had to have at least six prior Class D or E felony convictions in order to be sentenced as a career offender. The court found that the Appellant's six prior convictions

in Florida qualified him as a career offender and sentenced him as a Range III, career offender to twelve years in confinement.

On appeal, the Appellant contends that the trial court erred by considering his presentence report and the copies of the certified judgments of conviction from Florida because the documents were hearsay. We conclude that the trial court properly used the prior convictions to sentence the Appellant as a career offender.

As noted by the trial court, aggravated statutory rape is a Class D felony. Tenn. Code Ann. § 39-13-506(d)(3). Relevant to this case, a defendant is a career offender if the defendant has received "[a]t least six (6) prior felony convictions of any classification if the defendant's conviction offense is a Class D or E felony." Tenn. Code Ann. § 40-35-108(a)(3). If a trial court determines that a defendant is a career offender, the defendant shall receive the maximum punishment in the range for a Range III offender. Tenn. Code Ann. § 40-35-108(c). The maximum punishment for a Range III offender convicted of a Class D felony is twelve years. Tenn. Code Ann. § 40-35-112(c)(4). Furthermore, the release eligibility for a career offender is sixty percent less sentence credits earned and retained by the defendant. Tenn. Code Ann. § 40-35-501(f).

As to the Appellant's claim that his presentence report was inadmissible hearsay, Tennessee Code Annotated section 40-35-209(b) provides that in a sentencing hearing, reliable hearsay is admissible as long as a defendant "is accorded a fair opportunity to rebut any hearsay evidence so admitted." "This court has consistently held the presentence report to be reliable hearsay." State v. Adams, 45 S.W.2d 46, 59 (Tenn. Crim. App. 2000). Therefore, the trial court did not err by using the Florida convictions listed in the Appellant's presentence report to sentence him as a career offender.

Moreover, the State introduced into evidence photocopies of certified judgments of conviction for the offenses, which the State had introduced into evidence at a prior sentencing hearing for the Appellant. The Lawrence County Circuit Court Clerk attached a document to the photocopies, certifying that they were true and correct copies of the original certified judgments filed in the prior hearing. Moreover, the State requested that the trial court take judicial notice of the originals, and the trial court did so. See Tenn. R. Evidence 201(b), (c). In our view, the better practice would have been for the State to introduce original certified judgments of conviction into evidence at the sentencing hearing in the present case. In any event, the presentence report's being reliable hearsay "[makes] it unnecessary in most instances to introduce certified copies of convictions." State v. Alton Tappan, No. W2006-00168-CCA-R3-CD, 2007 WL 1556657, at *7 (Tenn. Crim. App. at Jackson, May 29, 2007) (citing State v. Adams, 45 S.W.3d 46, 59 (Tenn. Crim. App. 2000)). Therefore, we conclude that the trial court properly sentenced the Appellant as a career offender.

We note that the Appellant also contends that the trial court erred by finding that he had six or more prior qualifying felonies because "multiple convictions resulting from a crime spree that were adjudicated in a single proceeding could not be used to bump the sentencing range" and because "a 'prior conviction' means a conviction that has been adjudicated prior to the commission of the more recent offense for which sentence is to be imposed." However, the Appellant does not make any argument as to how those two principles apply to his convictions. Therefore, any issue he has attempted to raise in that regard has been waived. <u>See</u> Tenn. Ct. Crim. App. R. 10(b); Tenn. R. App. P. 27(a)(7).

### III.  Conclusion

Based upon the record and the parties' briefs, we affirm the judgment of the trial court.

_____
NORMA MCGEE OGLE, JUDGE